## ESQUIRE, INC.
### v.
### Barbara A. RINGER, Appellant.
### No. 76–1732.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 6, 1977.

Decided Aug. 14, 1978.

As Amended Sept. 22, 1978.

Donald Etra, Washington, D. C., with whom Earl J. Silbert, U. S. Atty., Irving Jaffe, Acting Asst. Atty. Gen., William Kanter, Atty., Dept. of Justice, Washington, D. C., was on the brief for appellant.

Charles L. Rowe, Chicago, Ill., with whom George A. Arkwright, Arlington, Va., was on the brief for appellee.

Before BAZELON, LEVENTHAL and ROBINSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge BAZELON.

Concurring opinion filed by Circuit Judge LEVENTHAL.

BAZELON, Circuit Judge:

This case presents the question whether the overall shape of certain outdoor lighting fixtures is eligible for copyright as a "work of art." The Register of Copyrights determined that the overall shape or configuration of such articles is not copyrightable. The district court disagreed, and issued a writ of mandamus directing the Register to enter the claim to copyright. *Esquire, Inc. v. Ringer*, 414 F.Supp. 939 (D.D.C.1976). For the reasons expressed below, we reverse.

## I.

Although the issues involved are fairly complex, the facts may be briefly stated. Appellee, Esquire, Inc. (Esquire) submitted three applications to the Copyright Office for registration of what it described as "artistic design[s] for lighting fixture[s]."[1] Photographs accompanying the applications showed stationary outdoor luminaries or floodlights, of contemporary design, with rounded or elliptically-shaped housings.[2] The applications asserted that the designs were eligible for copyright protection as "works of art." 17 U.S.C. § 5(g).

The Register of Copyrights (Register) refused to register Esquire's claims to copyright. The principal reason given was that Copyright Office regulations, specifically 37 C.F.R. § 202.10(c) (1976), preclude registration of the design of a utilitarian article, such as lighting fixtures, "when all of the design elements . . . are directly related to the useful functions of the article. . . ."[3] The fixtures, according to the Register's analysis, did not contain "elements, either alone or in combination, which are capable of independent existence as a copyrightable pictorial, graphic, or sculptur-

---

1. Joint Appendix (J.A.) at 4, 8, 12.

2. Esquire's more detailed description of its lighting fixtures indicates that:

    the lighting fixtures are provided with decorative housings having two different styles of artistic configuration. The ELLIPTRA I and ELLIPTRA II fixtures include oblate housings having a rounded upper portion, a cylindrical band between the upper and lower portions, and a cylindrical lower edge portion. The ELLIPTRA III design utilizes a generally cup-shaped housing having a generally elliptical cross section tapering into a rounded rear portion.

    Plaintiff's Brief in Support of Motion for Summary Judgment at 4; *Esquire, Inc. v. Ringer*, 414 F.Supp. 939 (D.D.C.1976).

3. J.A. at 28.

al work apart from the utilitarian aspect." [4] Esquire twice requested reconsideration of its copyright applications,[5] and was twice refused.[6]

Esquire then filed suit in the district court, seeking a writ of mandamus directing the Register to issue a certificate of copyright for its lighting fixture designs. This time, Esquire met with success. The court, per Judge Gesell, concluded that registration was compelled by *Mazer v. Stein*, 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630 (1954), where the Supreme Court upheld the copyright of statuettes intended to be mass-produced for use as table lamp bases. The district court reasoned that to uphold the issuance of the copyrights in *Mazer*, but deny Esquire's applications, would amount to affording certain copyright privileges to traditional works of art, but not to abstract, modern art forms. The court went on to find that "[t]he forms of the articles here in dispute are clearly art" and concluded that they were "entitled to the same recognition afforded more traditional sculpture." 414 F.Supp. at 941. The court also suggested

that registration of Esquire's designs was compelled by prior "interpretative precedent." *Id.* This appeal followed.

The heart of the controversy in this case involves, in the district court's words, an "elusive semantic dispute" over the applicable regulation, 37 C.F.R. § 202.10(c). We have divided our analysis of this dispute into two parts: Part II considers whether the Register adopted a permissible interpretation of the regulation; Part III, whether the regulation, as interpreted, was properly applied to the facts presented by Esquire's applications.[7]

II.

A.

Section 5(g) of the Copyright Act of 1909, 17 U.S.C. § 5(g), indicates that "[w]orks of art; models or designs for works of art" are eligible for copyright.[8] The terse language of the statute is more fully elaborated in regulations drafted by the Register pursuant to Congressional authorization.[9] The

4. J.A. at 28–29.

5. J.A. at 30–34 and 37–44.

6. J.A. at 35–36 and 45–46.

7. The district court's jurisdiction was based on the mandamus statute, 28 U.S.C. § 1361 (1970). Mandamus was clearly an appropriate remedy to compel the Copyright Office to adopt a lawful interpretation of its own regulations. *Workman v. Mitchell*, 502 F.2d 1210, 1215 (9th Cir. 1974); *see Bouve v. Twentieth Century-Fox Film Corp.*, 74 U.S.App.D.C. 271, 122 F.2d 51 (1941). The propriety of mandamus to compel the Copyright Office to apply the regulation differently to the facts is considered in n.28 *infra*.

8. The Copyright Act of 1976, 17 U.S.C. §§ 101–810 (1976) does not apply to this case. Section 103 of the Act, 90 Stat. 2599, indicates that "[t]his Act does not provide copyright protection for any work that goes into the public domain before January 1, 1978."

9. "Subject to the approval of the Librarian of Congress, the Register of Copyrights shall be authorized to make rules and regulations for the registration of claims to copyright as provided by this title." 17 U.S.C. § 207 (1970). See also 17 U.S.C. § 702 (1976).

The Register has promulgated regulations, codified currently in 37 C.F.R. § 202.10, to clarify the parameters of copyrightable "works of art." The general definition of "works of art," § 202.10(a), was adopted in 1948. It evidences a concern—pervasive in this area—to distinguish between "works of art" eligible for copyright, and functional or utilitarian articles not so eligible.

WORKS OF ART (CLASS G)

(a) General. This class includes published or unpublished works of artistic craftsmanship, insofar as their form but not their mechanical or utilization aspects are concerned, such as artistic jewelry, enamels, glassware, and tapestries, as well as works belonging to the fine arts, such as paintings, drawings and sculpture.

37 C.F.R. § 202.10(a).

Section 202.10(b) was enacted after the Supreme Court's decision in *Mazer v. Stein, supra*. This regulation embodies the principle, affirmed in *Mazer*, that commercial use does not disqualify an otherwise registrable work of art from copyright protection.

(b) In order to be acceptable as a work of art, the work must embody some creative authorship in its delineation or form. The registrability of a work of art is not affected by the intention of the author as to the use of the work, the number of copies reproduced, or the fact that it appears on a textile materi-

provision at issue, 37 C.F.R. § 202.10(c), provides as follows:

> (c) If the sole intrinsic function of an article is its utility, the fact that the article is unique and attractively shaped will not qualify it as a work of art. However, if the shape of a utilitarian article incorporates features, such as artistic sculpture, carving, or pictorial representation, which can be identified separately and are capable of existing independently as a work of art, such features will be eligible for registration.

The parties have advanced conflicting interpretations of § 202.10(c). The Register interprets § 202.10(c) to bar copyright registration of the overall shape or configuration of a utilitarian article, no matter how aesthetically pleasing that shape or configuration may be. As support for this interpretation, the Register notes that the regulation limits copyright protection to features of a utilitarian article that "can be identified separately and are capable of existing independently as a work of art." The Register argues that this reading is required to enforce the congressional policy against copyrighting industrial designs, and that it is supported by the continued practice of the Copyright Office and by legislative history.

Esquire on the other hand, interprets § 202.10(c) to allow copyright registration for the overall shape or design of utilitarian articles as long as the shape or design satisfies the requirements appurtenant to works of art—originality and creativity.[10] Esquire stresses that the first sentence of § 202.10(c) reads in its entirety, "If the *sole*

intrinsic function of an article is its utility, the fact that the article is unique and attractively shaped will not qualify it as a work of art." Esquire maintains that it designed its lighting fixtures with the intent of creating "works of modernistic form sculpture,"[11] and therefore that their *sole* intrinsic function is not utility. Esquire also contends that the language of § 202.-10(c) referring to "features . . . which can be identified separately and are capable of existing independently as a work of art" is not inconsistent with its interpretation. In effect, Esquire asserts that the *shape* of the lighting fixtures is the "feature" that makes them eligible for copyright as a work of art. Esquire argues that its reading of § 202.10(c) is required by the decisions of the Supreme Court in *Mazer v. Stein*, 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630 (1954) and *Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239, 23 S.Ct. 298, 47 L.Ed. 460 (1903).

### B.

■ We conclude that the Register has adopted a reasonable and well-supported interpretation of § 202.10(c).

■ The Register's interpretation of § 202.10(c) derives from the principle that industrial designs are not eligible for copyright. Congress has repeatedly rejected proposed legislation that would make copyright protection available for consumer or industrial products.[12] Most recently, Congress deleted a proposed section from the Copyright Act of 1976 that would have "create[d] a new limited form of copyright protection for 'original' designs which are

---

al or textile product. The potential availability of protection under the design patent law will not affect the registrability of a work of art, but a copyright claim in a patented design or in the drawings or photographs in a patent application will not be registered after *the patent has been issued*.
37 C.F.R. § 202.10(b).

**10.** "[T]he courts have uniformly inferred the [originality] requirement from the fact that copyright protection may only be claimed by 'authors,' or their successors in interest." 1 M. Nimmer, Copyright § 10 at 32 (1976). The requirement of creativity with respect to works

of art is embodied in 37 C.F.R. § 202.10(b), *supra* n. 9: "In order to be acceptable as a work of art, the work must embody some creative authorship in its delineation or form."

**11.** Brief for Appellee at 5.

**12.** Since 1914, approximately seventy design protection bills have been introduced in Congress, none of which has been enacted into law. Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss (Appendix A), *Esquire, Inc. v. Ringer*, 414 F.Supp. 939 (D.D.C.1976).

clearly a part of a useful article, regardless of whether such designs could stand by themselves, separate from the article itself." [13] In rejecting proposed Title II, Congress noted the administration's concern that to make such designs eligible for copyright would be to create a "new monopoly" [14] having obvious and significant anticompetitive effects. [15] The issues raised by Title II were left for further consideration in "more complete hearings" to follow the enactment of the 1976 Act. [16]

In the Register's view, registration of the overall shape or configuration of utilitarian articles would lead to widespread copyright protection for industrial designs. The Register reasons that aesthetic considerations enter into the design of most useful objects. Thus, if overall shape or configuration can qualify as a "work of art," "the whole realm of consumer products—garments, toasters, refrigerators, furniture, bathtubs, automobiles, etc.—and industrial products designed to have aesthetic appeal—subway cars, computers, photocopying machines, typewriters, adding machines, etc.—must also qualify as works of art." [17]

Considerable weight is to be given to an agency's interpretation of its regulations. "[T]he ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945); *accord, Udall v. Tallman*, 380 U.S. 1, 16–18, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Stein v. Mazer*, 204 F.2d 472, 477 (4th Cir. 1953), *aff'd.*, 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630 (1954). This is particularly so if an administrative interpretation relates to a matter within the field of administrative expertise and has been consistently followed for a significant period of time. *Southern Mutual Help Ass'n v. Califano*, 187 U.S.App.D.C. 307, 574 F.2d 518, 526 (1977). The Register's interpretation of § 202.10(c) reflects both administrative expertise and consistent application.

The regulation in question attempts to define the boundaries between copyrightable "works of art" and noncopyrightable industrial designs. This is an issue of longstanding concern to the Copyright Office, and is clearly a matter in which the Register has considerable expertise. [18]

---

**13.** H.R. Rep. No. 1476, 94th Cong., 2d Sess. 50 (1976), U.S.Code Cong. & Admin.News 1976, pp. 5659, 5663. The report explains that

> [t]he Committee chose to delete Title II in part because the new form of design protection provided by Title II could not truly be considered copyright protection and therefore appropriately within the scope of copyright revision.

*Id.*

**14.** *Id.*

**15.** The Register's brief illustrates the problems involved in allowing copyright of the shape of utilitarian articles.

> There are several economic considerations that Congress must weigh before deciding whether, for utilitarian articles, shape alone, no matter how aesthetically pleasing, is enough to warrant copyright protection. First, in the case of some utilitarian objects, like scissors or paper clips, shape is mandated by function. If one manufacturer were given the copyright to the design of such an article, it could completely prevent others from producing the same article. Second, consumer preference sometimes demands uniformity of shape for certain utilitarian articles, like stoves for instance. People simply

expect and desire certain everyday useful articles to look the same particular way. Thus, to give one manufacturer the monopoly on such a shape would also be anticompetive [sic]. Third, insofar as geometric shapes are concerned, there are only a limited amount of basic shapes, such as circles, squares, rectangles and ellipses. These shapes are obviously in the public domain and accordingly it would be unfair to grant a monopoly on the use of any particular such shape, no matter how aesthetically well it was integrated into a utilitarian article.

Brief for Appellant at 18–19. *See also* Note, *Protection for the Artistic Aspects of Articles of Utility*, 72 Harv.L.Rev. 1520, 1532 (1959).

**16.** H.R. Rep. No. 1476, *supra* note 13, at 50.

**17.** Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss at 15, *Esquire, Inc. v. Ringer*, 414 F.Supp. 939 (D.D.C.1976).

**18.** The Register indicates that the concepts of "intrinsic function," "works of art," and separation of features, embodied in 37 C.F.R. § 202.10(c), "are the result of a most searching and careful consideration by the Copyright Of-

802

■ Whether the Register's interpretation has been consistently followed for a significant period of time is somewhat less clear. Since the Copyright Office does not publish opinions explaining registration decisions, there is little evidence bearing directly on this point. What evidence exists, however, indicates that the Register's construction has been followed consistently.[19] The district court suggested, without elaboration, that prior registration decisions create an "interpretative precedent" favoring Esquire's position. 414 F.Supp. at 941. But we think this confuses the *test* employed by the Copyright Office in evaluating the copyrightability of utilitarian articles with the *results* that obtained after the

test was applied. The Register's test requires the application of subjective judgment, and given the large volume of copyright applications that must be processed there may be some results that are difficult to square with the denial of registration here.[20] But this does not mean that the Register has employed different standards in reaching these decisions. The available evidence points to a uniform and long-standing interpretation of § 202.10(c), and accordingly this interpretation is entitled to great weight.

■ The Register's interpretation of § 202.10(c) finds further support in the legislative history of the recently enacted 1976

fice of the intendment of the Copyright Act and the substantial economic impact of its decisions in this area . . . [T]he language of the provision was not casually chosen." Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss at 20, *Esquire, Inc. v. Ringer*, 414 F.Supp. 939 (D.D.C. 1976).

**19.** *See, e. g., SCOA Industries, Inc. v. Famolare, Inc.*, 192 U.S.P.Q. 216, 218 (S.D.N.Y.1976) (affirming denial of registration of shoe sole under § 202.10(c) since "the troughs, waves and lines which appear on the shoe sole cannot be identified and do not exist independently as works of art"); *Ted Arnold Ltd. v. Silvercraft Co.*, 259 F.Supp. 733 (S.D.N.Y.1966) (affirming issuance of copyright under § 202.10(c) because the registered article—a simulated antique telephone—could be separated physically and existed independently as a work of art apart from the pencil sharpener housed within the telephone casing). *See also Vacheron & Constantin Le Coultre Watches, Inc. v. Benrus Watch Co.*, 155 F.Supp. 932, 934 (S.D.N.Y. 1957), *rev'd in part on other grounds*, 260 F.2d 637 (2nd Cir. 1958).

The principle that copyright registration is not available for the overall shape or configuration of industrial articles appears to antedate the promulgation of § 202.10(c):

Since 1909, it seems to have been the practice of the Copyright Office to grant copyrights to works of art, and to deny copyrights to purely utilitarian objects. An object of artistic conception in a standard art form—e. g., sculpture or painting—has not been denied registration merely because of its possible utilitarian aspects. It is the work of art that is thus protected, not its utilitarian aspects. Thus copyright registration has been granted for stained glass windows, bas-relief bronze doors, sculptures in book-ends, candlestick holders and statuary lamps.

On the other hand, it has been the practice of the Copyright Office since 1909 to refuse copyright registration *only* to those works of a wholly utilitarian nature, which could not be called works of art although they might possess pleasing design. Rejection has been placed on the ground that protection for such works lay only under the Design Patent Law. Thus, registration has been refused for designs for refrigerators, clocks, stoves, gasoline pumps and oil dispensers.

*Stein v. Mazer*, 204 F.2d 472, 477 (4th Cir. 1953), *aff'd*, 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630 (1954).

**20.** Esquire contends that the Register has copyrighted the shape of useful articles, citing as support *Monogram Models, Inc. v. Industro Motive Corp.*, 492 F.2d 1281 (6th Cir.), *cert. denied*, 419 U.S. 843, 95 S.Ct. 76, 42 L.Ed.2d 71 (1974) (registration of model airplane kit as a kit); *S–K Potteries & Mold Co. v. Sipes*, 192 U.S.P.Q. 537 (N.D.Ind.1976) (registration of the designs on master molds for ceramic reproduction); *Ted Arnold Ltd. v. Silvercraft Co.*, 259 F.Supp. 733 (S.D.N.Y.1966) (registration of simulated antique telephone use as housing of pencil sharpener); *Royalty Designs, Inc. v. Thrifticheck Service Corp.*, 204 F.Supp. 702 (S.D.N.Y.1962) (registration of plastic molded toy coin banks in the shape of dogs); Copyright Registrations GU 50142 & GU 50143 (registration of candlesticks). The Register maintains with some plausibility that these cases were either correctly decided, *see, e. g., Ted Arnold, supra* n.19, or that they are distinguishable. For example, the Register asserts that the candlesticks registered in Copyright Registration GU 50142 & GU 50143 belong "to a small special category of articles . . . [whose] utilitarian function . . . has now atrophied." Reply Br. for Appellant at 5.

Copyright Act.[21] Although not applicable to the case before us,[22] the new Act was designed in part to codify and clarify many of the regulations promulgated under the 1909 Act, including those governing "works of art."[23] Thus, the 1976 Act and its legislative history can be taken as an expression of congressional understanding of the scope of protection for utilitarian articles under the old regulations. "Subsequent legislation which declares the intent of an earlier law is not, of course, conclusive . . . . But the later law is entitled to weight when it comes to the problem of construction." *Federal Housing Administration v. The Darlington, Inc.*, 358 U.S. 84, 90, 79 S.Ct. 141, 145, 3 L.Ed.2d 132 (1958).

The House Report indicates that the section of the 1976 Act governing "pictorial, graphic and sculptural works" was intended "to draw as clear a line as possible between copyrightable works of applied art and uncopyrighted works of industrial design."[24] The Report illustrates the distinction in the following terms:

. . . although the shape of an industrial product may be aesthetically satisfying and valuable, the Committee's intention is not to offer it copyright protection under the bill. Unless the shape of an automobile, airplane, ladies' dress, food processor, television set, or any other industrial product contains some element that, physically or conceptually, can be identified as separable from the utilitarian aspects of that article, the design would not be copyrighted under the bill. The test of separability and independence from "the utilitarian aspects of the article" does not depend upon the nature of the design—that is, <u>even if the appearance of an article is determined by esthetic (as opposed to functional) considerations, only elements, if any, which can be identified separately from the useful article as such are copyrightable</u>. And even if the three dimensional design contains some such element (for example, a carving on the back of a chair or a floral relief design on silver flatware), <u>copyright protection would extend only to that element, and would not cover the over-all configuration of the utilitarian article as such</u>.

H.Rep. No. 1476, 94th Cong., 2d Sess. 55 (1976), U.S.Code Cong. & Admin.News 1976, p. 5668 (emphasis added).

This excerpt is not entirely free from ambiguity. Esquire could arguably draw some support from the statement that a protectable element of a utilitarian article must be separable "physically *or conceptually*" from the utilitarian aspects of the design. But any possible ambiguity raised

---

21. 17 U.S.C. §§ 101–810 (1976) (effective January 1, 1978).

22. *See* n.8 *supra.*

23. The former classification "works of art" has been reformulated as "pictorial, graphic, and sculptural works" under the new Act. 17 U.S.C. § 102(a)(5) (1976). Section 101 of the Act advises that works encompassed within this category

include two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, technical drawings, diagrams, and models. Such works shall include *works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned*; the design of a useful article . . . shall be considered a pictorial, graphic, or sculptural work only if, and only to the extent that, *such design incorporates pictorial, graphic or sculptural features that can be identified separately from, and are capable of existing in-*

*dependently of, the utilitarian aspects of the article.*

17 U.S.C. § 101 (1976). The two italicized passages are drawn from 37 C.F.R. §§ 202.10(a) and (c), respectively. Section 202.10(a) was expressly endorsed by the Supreme Court in *Mazer v. Stein*, 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630 (1954). The Committee on the Judiciary incorporated its language into "the definition of 'pictorial, graphic, and sculptural works' in an effort to make clearer the distinction between works of applied art protectable under the bill and industrial designs not subject to copyright protection." H.R. Rep. No. 1476, *supra* n.13, at 54, U.S.Code Cong. & Admin.News 1976, p. 5667. The second italicized passage "is an adaption of [§ 202.10(c)], added to the Copyright Office Regulations in the mid-1950's in an effort to implement the Supreme Court's decision in the *Mazer* case." *Id.* at 54–55, U.S.Code Cong. & Admin.News 1976, p. 5668.

24. H.R. Rep. No. 1476, *supra* n.13, at 55.

by this isolated reference disappears when the excerpt is considered in its entirety. The underscored passages indicate unequivocally that the overall design or configuration of a utilitarian object, even if it is determined by aesthetic as well as functional considerations, is not eligible for copyright. Thus the legislative history, taken as congressional understanding of existing law, reinforces the Register's position.

The legislative history of the 1976 Act also supports the Register's practice of ascribing little weight to the phrase "sole intrinsic function." As noted above, see TAN 11 supra, Esquire contends that as long as the overall shape of a utilitarian article embodies dual intrinsic functions—aesthetic and utilitarian—that shape may qualify for registration. But the new Act includes a definition of "useful article," referred to by the House Report as "an adaptation" of the language of § 202.10(c), H.R. Rep. No. 1476, supra n.13, at 54, U.S.Code Cong. & Admin.News 1976, p. 5668, which provides:

> A 'useful article' is an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information.

17 U.S.C. § 101 (1976) (emphasis added). In deleting the modifier "sole" from the language taken from § 202.10(c), the draftsmen of the 1976 Act must have concluded that the definition of "useful article" would be more precise without this term. Moreover, Congress may have concluded that literal application of the phrase "sole intrinsic function" would create an unworkable standard. For as one commentator has observed, "[t]here are no two-dimensional works and few three-dimensional objects whose design is absolutely dictated by utilitarian considerations." [25]

## C.

The district court basically ignored the foregoing considerations. Instead, it advanced two reasons for rejecting the Register's interpretation of § 202.10(c) as a matter of law. It concluded, first, that the Register's construction was inconsistent with the Supreme Court's decision in Mazer v. Stein, 347 U.S. 201, 79 S.Ct. 141, 3 L.Ed.2d 132 (1954). Second, it found that the Register's interpretation amounted to impermissible discrimination against abstract modern art. We respectfully disagree on both counts.

We are unable to join in the district court's broad reading of Mazer v. Stein, supra.[26] The principal issue in Mazer was whether objects that are concededly "works of art" can be copyrighted if incorporated into mass-produced utilitarian articles. The Register had issued copyright certificates for the statuettes of Balinese dancing figures created with the intent to reproduce and sell them as bases for table lamps. The Court noted that the "long-continued construction of the statutes" by the Copyright Office permitted registration of the statuettes as "works of art." 347 U.S. at 213, 74 S.Ct. at 468. It then concluded that there was "nothing in the copyright statute to support the argument that the intended use or use in industry of an article eligible for copyright bars or invalidates its registration." Id. at 218, 74 S.Ct. at 471 (emphasis added).

The issue here—whether the overall shape of a utilitarian object is "an article eligible for copyright"—was not addressed in Mazer. In fact, under the Register's interpretation of § 202.10(c), the dancing figures considered in Mazer would clearly be copyrightable. The statuettes were undeniably capable of existing as a work of art independent of the utilitarian article into which they were incorporated. And

---

**25.** Comment, *Copyright Protection for Mass-Produced, Commercial Products: A Review of the Developments Following Mazer v. Stein*, 38 U.Chi.L.Rev. 807, 812 (1971).

**26.** A number of authorities are in agreement that *Mazer* should not be read as opening the door to the inclusion of industrial designs under copyright law. *See* B. Kaplan, An Unhurried View of Copyright 55 (1968); 38 U.Chi.L.Rev. *supra* note 25, at 823; 72 Harv.L.Rev., *supra*, n.15, at 1526.

they were clearly a "feature" segregable from the overall shape of the table lamps. There is thus no inconsistency between the copyright upheld in *Mazer* and the Register's interpretation of § 202.10(c) here.

The district court's second conclusion is somewhat more problematical. The court found, in effect, that that Register's interpretation of § 202.10(c) amounted to impermissible discrimination against designs that "emphasize line and shape rather than the realistic or the ornate . . . ." 414 F.Supp. at 941.

■ We agree with the district court that the Copyright Act does not enshrine a particular conception of what constitutes "art." *Id.*[27] As Justice Holmes noted in *Bleistein v. Donaldson Lithographing Co.,* 188 U.S. 239, 251, 23 S.Ct. 298, 300, 47 L.Ed. 460 (1903), "[i]t would be a dangerous undertaking for persons trained only to the law to constitute themselves final judges of the worth of pictorial illustrations . . ." Neither the Constitution nor the Copyright Act authorizes the Copyright Office or the federal judiciary to serve as arbiters of national taste. These officials have no particular competence to assess the merits of one genre of art relative to another. And to allow them to assume such authority would be to risk stultifying the creativity and originality the copyright laws were expressly designed to encourage. *Id.* at 251–52, 23 S.Ct. 298; *accord, Mazer v. Stein, supra* at 214, 79 S.Ct. 141.

■ But in our view the present case does not offend the nondiscrimination principle recognized in *Bleistein.* *Bleistein* was concerned only with conscious bias against one form of art—in that case the popular art reflected in circus posters. Esquire's complaint, in effect, is that the Register's interpretation of § 202.10(c) places an inadvertent burden on a particular form of art, namely modern abstract sculpture. We may concede, for present purposes, that an interpretation of § 202.10(c) that bars copy-

right for the overall design or configuration of a utilitarian object will have a disproportionate impact on designs that exhibit the characteristics of abstract sculpture. But we can see no justification, at least in the circumstances of this case, for extending the nondiscrimination principle of *Bleistein* to include action having an unintentional, disproportionate impact on one style of artistic expression. Such an extension of the nondiscrimination principle would undermine other plainly legitimate goals of copyright law—in this case the congressional directive that copyright protection should not be afforded to industrial designs.

■ At oral argument, Esquire proposed for the first time a test which it claimed would respect the principle disfavoring the copyright of industrial designs, and yet would not impose a differential burden on modernistic art forms. Esquire suggested that the overall design or configuration of a utilitarian article should be copyrightable as a work of art if its shape is original and creative, and it exhibits "a sufficient quantity of intellectual labor" to distinguish it from everyday industrial designs. However, Esquire was unable to cite any authority in support of this proposed test. Moreover, such a test would pose obvious administrative difficulties, and would appear to thrust the Copyright Office and the courts into the very role Esquire argues so forcefully against—as overseers of the relative "worth" or value of different forms of art. Accordingly, we find no basis for requiring the Register to consider Esquire's belated suggestion.

### III.

■ Given that the Register adopted an appropriate interpretation of § 202.10(c), the question remains whether the regulation was properly applied to the materials presented by Esquire's copyright claims. In general, the Copyright Act "establishes a

---

**27.** The House Report accompanying the 1976 Copyright Act reaffirms this principle. "[T]he definition of 'pictorial, graphic, and sculptural works' carries with it no implied criterion of artistic taste, aesthetic value, or intrinsic quality." H.R. Rep. No. 1476, *supra* n.13, at 54, U.S.Code Cong. & Admin.News 1976, p. 5667.

wide range of selection within which discretion must be exercised by the Register in determining what he has no power to accept." *Bouve v. Twentieth Century-Fox Film Corp., supra* 74 U.S.App.D.C. at 273, 122 F.2d at 53; *accord,* Op. Att'y Gen., 183 U.S.P.Q. 624, 628 (1974); 30 Op. Att'y Gen. 422, 424 (1915). Here, the application of the regulation to the facts presented by Esquire's copyright applications unquestionably involved the exercise of administrative discretion.[28]

■ When the question of the application of the regulation was raised at oral argument, Esquire took the position that its copyright applications should be read as requesting registration for only *part* of a utilitarian object. Specifically, Esquire maintained that it sought registration for the *housing* of each fixture, not for the design of the entire lighting assembly—including base, housing, electrical fixture, and light bulb. But Esquire's applications were not so limited. Each characterized the work for which registration was sought as an "artis-

tic design for lighting fixtures."[29] The photographs accompanying the applications portrayed both housings and bases for the lighting fixtures. No lesser feature was singled out as being that for which registration was sought. On the basis of these submissions, the Register could quite reasonably conclude that Esquire was claiming a copyright for the overall design of its outdoor lighting fixtures. The denial of registration in these circumstances did not amount to an abuse of discretion.

For the aforesaid reasons, the decision of the district court is

*Reversed.*

LEVENTHAL, Circuit Judge, concurring:

I concur in the judgment of reversal. I also concur in Judge Bazelon's opinion which I understand to hold that the provision of the Copyright Act limiting design copyright protection to "works of art," 17 U.S.C. § 5(g) (1976), authorizes the issuance

---

**28.** Traditionally, of course, the writ of mandamus is not available to review nonministerial, discretionary decisions. *See, e. g., Panama Canal Co. v. Grace Line, Inc.,* 356 U.S. 309, 318, 78 S.Ct. 752, 2 L.Ed.2d 788 (1958). Recently, however, a number of courts have indicated that even discretionary decisions may be set aside under the mandamus statute, 28 U.S.C. § 1361, if they fall outside the bounds of "any rational exercise of discretion." *United States v. Commanding Office, Armed Forces,* 403 F.2d 371, 374 (2d Cir. 1968), *cert. denied,* 394 U.S. 929, 89 S.Ct. 1195, 22 L.Ed.2d 460 (1969); *accord, Miller v. Ackerman,* 488 F.2d 920, 922 (8th Cir. 1973); *Lovallo v. Froehlke,* 468 F.2d 340, 346 (2d Cir. 1972). The interpretation of 28 U.S.C. § 1361 supported by the concurrence would extend mandamus jurisdiction one step further, and implies that mandamus is appropriate whenever, under § 10 of the Administrative Procedure Act, 5 U.S.C. § 706, a discretionary decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See Peoples v. United States Dept. of Agriculture,* 138 U.S.App.D.C. 291, 295, 427 F.2d 561, 565 (1970). The possible distinctions between these standards, and the considerations relevant to which should apply, were neither briefed nor argued. Nor is it necessary to resolve these questions here, for it is abundantly clear that under any standard the Register's application of § 202.10(c) did not constitute an abuse of discretion.

We do not question that in appropriate circumstances, the denial of registration may be reviewed in the district court in an action in the nature of mandamus. Indeed, as noted earlier, (*see* n.7 *supra* ) mandamus would be an appropriate remedy where federal officials are acting contrary to their own regulations. Other copyright cases have presented situations where jurisdiction was found to lie under mandamus. *See, e. g., Bouve v. Twentieth Century-Fox Film Corp.,* 74 U.S.App.D.C. 271, 122 F.2d 51 (1941); *Hoffenberg v. Kaminstein,* 130 U.S. App.D.C. 35, 396 F.2d 684, *cert. denied,* 393 U.S. 913, 89 S.Ct. 235, 21 L.Ed.2d 199 (1968). *But cf. Public Affairs Associates, Inc. v. Rickover,* 268 F.Supp. 444 (D.D.C.1967).

We note that the new Copyright Act provides a jurisdictional basis other than mandamus to challenge the denial of copyright registration. Under the old Act, an infringement suit could not be brought until registration had been obtained. *Vacheron & Constatin-Le Coultre Watches, Inc. v. Benrus Watch Co.,* 260 F.2d 637 (2d Cir. 1958). Under the 1976 Copyright Act, however, an infringement action may be brought after applying for registration, even if registration has been denied. *17 U.S.C. § 411* (1976). In such an infringement suit the court would then review the denial of registration. *Id. See* H.R. Rep. No. 1476, *supra* note 13, at 157.

**29.** J.A. at 4, 8, 12.

of the pertinent Copyright Office regulations, 37 C.F.R. § 202.10(c) (1977), and that both statute and regulations may be interpreted to preclude registration (a) of the design of a useful article, however aesthetically valuable, and (b) of any elements of the design unless they can be identified separately from the utilitarian aspects of the design. Esquire contends that the restrictive passage of section 202.10(c), which refers to situations where "the sole intrinsic function of an article is its utility," must be read narrowly, so as to make the prohibition on registration inapplicable where an article possesses from the outset not only utility but an aesthetically original and pleasing design form. I join in the rejection of that contention. Form follows function, in the credo of one school of art. Yet the overall legislative policy against monopoly for industrial design sustains the Copyright Office in its effort to distinguish between the instances where the aesthetic element is conceptually severable and the instances where the aesthetic element is inextricably interwoven with the utilitarian aspect of the article.

I add a word to note that Judge Bazelon's opinion reflects the court's premise that the district court had jurisdiction of this action even though Esquire requested issuance of a writ of mandamus to the Register of Copyrights.

The courts have issued mandatory instructions to federal officials notwithstanding the wording of Federal Rule of Civil Procedure 81(b), which by its terms abolishes the writ of mandamus in the federal district courts.[1] The rule permits equivalent relief, and the courts have issued orders that "for brevity, we may still speak of as . . . 'mandamus.' "[2]

The Mandamus and Venue Act of 1962, 28 U.S.C. § 1361 (1970), authorizes district courts generally to issue writs of mandamus to federal officials and "to issue appropriate corrective orders where Federal officials are not acting within the zone of their permissible discretion but are abusing their discretion or otherwise acting contrary to law."[3] Although 28 U.S.C § 1361 applies only in case of a "duty owed to plaintiff," it is not bounded by the hoary strictures of old mandamus law.

Apart from an action in mandamus, which may retain residual rigidity, there is jurisdiction to provide declaratory relief under the 1976 amendment to 28 U.S.C. § 1331. That eliminated the jurisdictional amount requirement for any federal question in an "action brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity." Now section 1331 broadly confers jurisdiction on federal courts to review agency action "subject only to preclusion-of-review statutes created or retained by Congress." *Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977). Regulations implementing federal statutes have the "force and effect of law"[4]

---

1. *See* K. Davis, Administrative Law Treatise § 23.10 (1958).

2. *Vacheron & Constantin-Le Coultre Watches, Inc. v. Benrus Watch Co.*, 260 F.2d 637, 640 (2d Cir. 1958) (L. Hand, J.).

3. *People v. United States Dept. of Agriculture*, 138 U.S.App.D.C. 291, 295, 427 F.2d 561, 565 (1970); *Haneke v. Secretary of HEW*, 175 U.S. App.D.C. 329, 333–34, 535 F.2d 1291, 1295–96 (1976). Prior to 1962 the District Court of the District of Columbia was the only federal court that had authority, by virtue of its general equity jurisdiction, to issue a writ against a federal official. *See Kendall v. United States*, 37 U.S. (12 Pet.) 524, 9 L.Ed. 1181 (1838); *McIntire v. Wood*, 11 U.S. (7 Cranch) 504, 3 L.Ed. 420 (1813). *See generally* Byse & Fiocca, *Section 1361 of the Mandamus and Venue Act of 1962 and "Nonstatutory" Judicial Review of Federal Administrative Action*, 81 Harv.L.Rev. 308, 310–13 (1967).

4. *Batterton v. Francis*, 432 U.S. 416, 425 n.9, 97 S.Ct. 2399, 53 L.Ed.2d 448 (1977); *Foti v. Immigration and Naturalization Serv.*, 375 U.S. 217, 222, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963); *see Service v. Dulles*, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957).
As to the "force of law" given to administrative regulations, a striking instance is *Paul v. United States*, 371 U.S. 245, 83 S.Ct. 426, 9 L.Ed.2d 292 (1963), holding that Armed Services Procurement Regulation requiring competitive bidding has "the force of law" and overrides California's minimum price regulation of milk insofar as it purported to regulate sales of milk to military installations. Thus regulations

and cases arising under them are cases arising "under . . . laws . . . of the United States." 28 U.S.C. § 1331(a) (1970).[5]

As Judge Bazelon's opinion notes (fn. 28) the 1976 revision of the Copyright Act permits a copyright claimant to bring an infringement action even though the copyright has not been registered. 17 U.S.C. § 411 (1976). That statutory provision permits review of the Register's negative decision, and gives the Register an option to intervene. But the Copyright Act requires an infringement, and the claimant may wish to seek prior relief, i. e., to obtain the copyright registration, precisely in order to avoid the infringement and its disastrous business consequences.[6]

As for litigation involving details of application of a regulation, the Register of Copyrights has broad discretion. In this case, as Judge Bazelon points out, the application of the regulation to the facts involved the exercise of administrative discretion, and the denial of registration in the circumstances did not amount to an abuse of discretion. The subject-matter of copyrights is such as to suggest that rarely if ever will a ruling denying an application for copyright on the basis of the application of a regulation be considered a contravention of a duty owed to the applicant. There is jurisdiction but no large likelihood of successful invocation.

were federal law for purposes of the Supremacy Clause. In 1963 the Court of Claims held that although the standard termination-for-convenience clause had been omitted from a contract, it would be deemed part of the procurement agreement since its inclusion was required by regulation, which had the "force of law." *G. L. Christian and Associates v. United States*, 312 F.2d 418, 160 Ct.Cl. 1, *cert. denied*, 375 U.S. 954, 84 S.Ct. 444, 11 L.Ed.2d 314 (1963). *See generally* Leventhal, *Public Contracts and Administrative Law*, 52 A.B.A.J. 35 (1966).

The foregoing does not preclude an attack, for reasons of procedure or substance, on the regulations or any provision of the regulations.

5. Compare Judge Friendly's opinion in *Empresa Hondurena De Vapores v. McLeod*, 300 F.2d 222 (2d Cir. 1962), *vacated on other grounds sub nom. McCulloch v. Sociedad Nacional de*

*Marineros de Honduras*, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963). That case involved an attempt by a Honduran corporation to enjoin a Regional Director of the NLRB from conducting a representation election on a Honduran registered vessel. In holding that the controversy was one "arising under" federal law, Judge Friendly observed:

it would run counter both to the language and to the policy underlying [28 U.S.C. § 1337] to hold that the jurisdictional grant did not include an action whose sole purpose is to challenge an order of a Federal agency sought to be justified by a Federal statute. 300 F.2d at 226–27.

6. Whether the Copyright Act remedy is exclusive in the event of infringement is a separate question.