**TRANS–WORLD MANUFACTURING CORPORATION (a corporation of the State of New Jersey), Plaintiff,**

v.

**AL NYMAN & SONS, INC., (a corporation of the State of Delaware), Defendant.**

Civ. A. No. 81–471.

United States District Court, D. Delaware.

July 16, 1982.

Harold Pezzner, of Connolly, Bove & Lodge, Wilmington, Del., for plaintiff; William L. Mentlik, of Lerner, David, Littenberg & Samuel, Westfield, N. J., of counsel.

Edward P. Welch, of Skadden, Arps, Slate, Meagher & Flom, Wilmington, Del., for defendant; Peter T. Cobrin, of Kirschstein, Kirschstein, Ottinger & Cobrin, New York City, of counsel.

OPINION

CALEB M. WRIGHT, Senior Judge.

This matter is before the Court on the defendant's Motion for Summary Judgment as to the plaintiff's copyright claims. The copyright count of the Complaint alleges that Al Nyman & Sons, Inc., ("Nyman") has reproduced or had reproduced on its behalf eyeglass displays in violation of the plaintiff's exclusive rights therein under the Copyright Act of 1976, Title 17 of the United States Code. Nyman argues in connection with its present motion that the eyeglass displays are industrial designs which are uncopyrightable as a matter of law. For the reasons hereinafter set forth, the Court finds that there exists a genuine issue of material fact as to the copyright registrability of the subject matter at issue. The defendant's Motion for Summary Judgment is accordingly denied.

According to the Complaint, Nyman approached the plaintiff, Trans-World Manufacturing Corp. ("Trans-World"), which is in the business of designing and manufacturing advertising displays, and requested that Trans-World develop new models for eyeglass displays for the defendant. It is further alleged that such designs were developed by the plaintiff and that models thereof were delivered to the defendant,

each model bearing a label which stated that all reproduction rights in the displays were reserved entirely to Trans-World. Nyman's allegedly unauthorized reproduction of such displays gave rise to the present action.

The fourth count of the Complaint charges the defendant with infringement under the Copyright Act of Trans-World's exclusive right to reproduce its work.[1] 17 U.S.C. §§ 106, 501. The Court notes at the outset of its analysis of the registrability of the eyeglass displays in question that the plaintiff's copyright application was rejected by the Copyright Office on the ground that the material submitted by the plaintiff was "limited to three dimensional material which is lacking in the sculptural authorship necessary to sustain a registration....". Complaint, Exhibit "H". Upon such rejection and the service of notice of the present action on the Register of Copyrights, the plaintiff's copyright claim, including its prayer for a declaration of registrability, is properly before this Court. 17 U.S.C. § 411(a).

The works at issue are two types of eyeglass display cases, one "horizontal" and the other "vertical". As described by John Dewees,[2] who holds the position of creative director at Trans-World, the horizontal display is an essentially boxlike structure containing a curving "free-form sculpture"

which creates a scalloped effect. Dewees Affidavit at 3. The vertical display is a chevron-shaped unit atop a base and pedestel with cut-outs at the outside edges of the individual chevrons designed to provide access to the eyeglasses contained therein and "to complement the original chevron concept and feeling and maintain a consistent artistic approach to the overall design." Dewees Affidavit at 4. Mr. Dewees stated that the aesthetic considerations underlying the designs derived in part from the expectation that, as eyeglasses were removed from a case upon sale, the case would be "pleasing to look at and [able to] exist independently as an artistic creation in such a state, *i.e.*, in the absence of the articles which it is intended to display." Dewees Affidavit at 3. The Court has viewed sketches of the original models submitted by Trans-World to the Copyright Office as well as two allegedly infringing display cases in the possession of the defendant.[3]

The eyeglass displays were described in Trans-World's copyright applications as "sculptural material." Section 102(a)(5) of the Copyright Act of 1976 provides that "pictorial, graphic, and sculptural works" are within the subject matter of copyright. "Pictorial, graphic, and sculptural works" are defined in 17 U.S.C. § 101:

> "Pictorial, graphic, and sculptural works" include two-dimensional and

1. The other three causes of action, for breach of contract and design patent infringement, are not presently before the Court.

2. Affidavit of John Dewees, attached to Trans-World's Memorandum in Opposition to Defendant's Motion for Summary Judgment.

3. The plaintiff's attorney stated in letters accompanying Trans-World's copyright applications that the material submitted to the Copyright Office consisted only of drawings and photographs of drawings because "the only existing actual copy of the original work is the prototypes which were sold to Al Nyman & Son and which, as a result of the present relationship between applicant and Al Nyman & Son, were not available for applicant to photograph." Affidavit of Peter T. Cobrin (of counsel to defendant in the present case), Exhibits "A" and "B". Copies of the drawings were also attached to the Affidavit of John Dewees as Exhibits "A" and "B".

At the hearing on the present motion, Trans-World's attorney requested that the Court bear in mind upon examination of the two plastic cases submitted to the Court by Nyman that the original models constructed by the plaintiff, at least one of which was made of wood, looked less "utilitarian" and more like "works of art." Tr. at 35. Nyman's attorney argued that the composition of the original models was an irrelevant consideration, that Trans-World could not "have it both ways" by charging infringement while at the same time characterizing the allegedly infringed work as more a "work of art" than the copy. Tr. at 36. Rather than base its decision on an examination of an article which might ultimately be held not to infringe the work in question, the Court has considered only the sketches of Trans-World's eyeglass displays in analyzing the registrability of the displays.

three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, technical drawings, diagrams, and models. Such works shall include works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned; the design of a useful article, as defined in this section, shall be considered a pictorial, graphic, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.

The parties are in agreement that the eyeglass displays at issue here are "useful articles" as defined in the Copyright Act.[4] The dispositive inquiry on the present motion is thus whether the design of the displays contains sculptural elements that can be identified separately from, and are capable of existing independently of, their utilitarian aspects. The House Report accompanying the Copyright Act characterized separability in terms of whether the useful article "contains some element that, physically or conceptually, can be identified as separable from the utilitarian aspects of that article. . . ." H.R.Rep.No.1476, 94th Cong., 2d Sess. 55, *reprinted in* 1976 U.S. Code Cong. & Ad.News 5659, 5668.[5]

The defendant, relying heavily on *Esquire, Inc. v. Ringer*, 591 F.2d 796 (D.C.Cir. 1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1217, 59 L.Ed.2d 456 (1979), contends that, as a matter of law, Trans-World's eyeglass displays possess no sculptural elements separate and distinct from their functional use. In the *Esquire* case, the D. C. Circuit Court of Appeals reversed the District Court's issuance of a writ of mandamus directing the Register of Copyrights, who had rejected Esquire's applications for its lighting fixture designs, to issue a certificate of copyright for such designs. Upon analyzing a portion of the House Report accompanying

---

4. "A 'useful article' is an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information. An article that is normally a part of a useful article is considered a 'useful article'." 17 U.S.C. § 101.

5. The House Report more fully set forth the distinction to be made between copyrightable works of applied art and uncopyrightable industrial designs:

> The Committee [on the Judiciary] has added language to the definition of "pictorial, graphic, and sculptural works" in an effort to make clearer the distinction between works of applied art protectable under the bill and industrial designs not subject to copyright protection. The declaration that "pictorial, graphic, and sculptural works" include "works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned" is classic language; it is drawn from Copyright Office regulations promulgated in the 1940's and expressly endorsed by the Supreme Court in the *Mazer* case. [*Mazer v. Stein*, 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630 (1954)]
> 
>    *     *     *     *     *     *
> 
> In adopting this amendatory language, the Committee is seeking to draw as clear a line as possible between copyrightable works of applied art and uncopyrighted works of industrial design. A two-dimensional painting, drawing, or graphic work is still capable of being identified as such when it is printed on or applied to utilitarian articles such as textile fabrics, wallpaper, containers, and the like. The same is true when a statute or carving is used to embellish an industrial product or, as in the Mazer case, is incorporated into a product without losing its ability to exist independently as a work of art. On the other hand, although the shape of an industrial product may be aesthetically satisfying and valuable, the Committee's intention is not to offer it copyright protection under the bill. Unless the shape of an automobile, airplane, ladies' dress, food processor, television set, or any other industrial product contains some element that, physically or conceptually, can be identified as separable from the utilitarian aspects of that article, the design would not be copyrighted under the bill. The test of separability and independence from "the utilitarian aspects of the article" does not depend upon the nature of the design—that is, even if the appearance of an article is determined by esthetic (as opposed to functional) considerations, only elements, if any, which can be identified separately from the useful article as such are copyrightable.
> 
> H.R.Rep.No.1476, 94th Cong., 2d. Sess. 55, *reprinted in* 1976 U.S.Code Cong. & Ad.News 5668.

the 1976 Act[6] and quoted at note 5 *supra*, the D. C. Circuit concluded that despite the express reference to "physical *or conceptual*" separability in the Report (emphasis supplied), the relevant portion of the Report when read in its entirety indicated "unequivocally that the overall design or configuration of a utilitarian object, even if it is determined by aesthetic as well as functional considerations, is not eligible for copyright." 591 F.2d 803–04. The Court emphasized the desirability of judicial deference to the expertise of the Copyright Office in determining registrability, and held that the Register's rejection of Esquire's application on grounds of inseparability of the fixtures' sculptural and utilitarian aspects did not amount to an abuse of discretion.[7] 591 F.2d at 805–06.

The Second Circuit has held, contrary to *Esquire*, that "conceptual separability" of a useful article's sculptural and utilitarian features is sufficient to sustain copyright registrability. *Kieselstein-Cord v. Accessories by Pearl, Inc.*, 632 F.2d 989 (2d Cir. 1980). In *Kieselstein-Cord*, the Second Circuit reversed the District Court's grant of summary judgment in favor of the defendant and upheld the copyrights granted to the plaintiff for two ornamental belt buckles. The District Court, citing the *Esquire* case, had found the buckles to be uncopyrightable because they failed to meet the separability test for useful articles under either the 1909 or 1976 Copyright Acts.[8] *Kieselstein-Cord v. Accessories by Pearl, Inc.*, 489 F.Supp. 732, 735–36 (S.D.N.Y.

1980). The Second Circuit rejected the defendant-appellee's assertion that the conceptual separability of a sculptural element from a useful article was inadequate to support copyright:

This assertion flies in the face of the legislative intent as expressed in the House Report, which specifically refers to elements that "physically or conceptually, can be identified as separable from the utilitarian aspects of" a useful article. *House Report* at 55 [1976] U.S.Code Cong. & Admin.News at 5668.

We see in appellant's belt buckles conceptually separable sculptural elements, as apparently have the buckles' wearers who have used them as ornamentation for parts of the body other than the waist. The primary ornamental aspect of the Vaquero and Winchester buckles is conceptually separable from their subsidiary utilitarian function."

632 F.2d at 993.

The defendant in the present case asserts that the Second Circuit's opinion in *Kieselstein-Cord* is not well-reasoned and moreover that the case was, in the words of the majority, "on a razor's edge of copyright law" not present here. The Court disagrees. In light of the clear legislative language relied upon in Judge Oakes' opinion, the Court finds *Kieselstein-Cord* well-reasoned and persuasive. While it is unnecessary for disposition of the present motion to define the ambit of this area of the copyright law,[9] it would seem that a useful

---

**6.** Although the *Esquire* case arose under the Copyright Act of 1909, the Circuit Court expressly considered the Copyright Act of 1976 and its legislative history "as an expression of congressional understanding of the scope of protection for utilitarian articles under the old regulations." 591 F.2d at 803.

**7.** The Court notes that there is no basis in the present case for an inference that the Copyright Office considered the separability issue in rejecting Trans-World's copyright application. Rather, the plaintiff's works were refused copyright because of a lack of "sculptural authorship", an issue not addressed in connection with the present motion. Deference to administrative expertise is thus not a relevant consideration at this stage of the case.

**8.** Due to its registration prior to the effective date of the Copyright Act of 1976, one of the buckles in question was within the purview of the 1909 Act.

**9.** The Second Circuit in *Kieselstein-Cord* may have relied on its finding that the belt buckles at issue had a "primary ornamental aspect" conceptually separable from their "subsidiary utilitarian function." 632 F.2d at 993. Professor Nimmer has suggested a "likelihood of marketability" standard which, "while not all together satisfactory" would draw the conceptual separability line "where there is any substantial likelihood that even if the article had no utilitarian use it would still be marketable to some significant segment of the community simply because of its aesthetic qualities." 1

article possessing sculptural elements that are conceptually, though not physically, separable from its utilitarian elements is copyrightable.

Nyman urges that even if the Court should find conceptual separability adequate to support copyright, Trans-World should be held not to have met that criterion as a matter of law. The Court cannot agree. Summary judgment is to be granted only in cases in which "there is no genuine issue as to any material fact. . . ." Fed. R.Civ.P. 56(c). The Third Circuit has characterized summary judgment as "a drastic remedy" and has stated that any doubt as to the existence of an issue of material fact is to be resolved against the moving party. *See Hollinger v. Wagner Mining Equipment Co.*, 667 F.2d 402, 405 (3d Cir. 1981) and cases cited therein.

The Dewees affidavit and the sketches of Trans-World's eyeglass displays are sufficient to raise a genuine issue of material fact in the present case. While House Report No. 1476 makes clear that the subjective intent of a designer as to the aesthetic effect of a useful article will not of itself entitle the article to copyright, Mr. Dewees' appraisal of the artistic merit of the display cases in question is entitled to some weight in the Court's consideration of registrability. Moreover, the Court has examined the sketches of Trans-World's works and cannot conclude at this stage of the proceedings that there is no sculptural element of such works conceptually separate from, and capable of existing independently of, their utilitarian aspects. Such a conclusion should be made by the trier of fact on the basis of expert testimony rather than as a matter of law by this Court on the scant record before it. As Justice Holmes stated in holding chromolithographic circus advertisements to be copyrightable, "It would be a dangerous undertaking for persons trained only to the law to constitute themselves final judges of the worth of pictorial illustrations, outside of the narrowest and most obvious limits." *Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239, 251, 23 S.Ct. 298, 300, 47 L.Ed. 460 (1903).

Nimmer on Copyright § 2.08[B] at 2–96 to 2–97

The defendant's Motion for Summary Judgment is denied. An Order will be entered in accordance with this Opinion.