Barry KIESELSTEIN–CORD, Plaintiff,

v.

ACCESSORIES BY PEARL, INC., Defendant.

No. 80 Civ. 1029(GLG).

United States District Court, S. D. New York.

April 30, 1980.
As Amended May 7, 1980.

Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for plaintiff; Janet P. Kane, Ronald J. Levine, New York City, of counsel.

Darby & Darby, P.C., New York City, for defendant; William F. Dudine, Jr., New York City, of counsel.

## OPINION

GOETTEL, District Judge.

Plaintiff Barry Kieselstein-Cord is the designer of two belt buckles called the Winchester Buckle and the Vaquero Buckle, copies of which he alleges defendant Accessories By Pearl, Inc. has made, sold, distributed, and/or advertised. In this suit for copyright infringement, trademark infringement, and unfair competition, plaintiff has moved for a preliminary injunction and both parties have moved for summary judgment on the copyright claims. After evidentiary hearings on those motions, the Court denies plaintiff's motion for a preliminary injunction or summary judgment and grants defendant's motion for summary judgment.[1]

Plaintiff's buckles are both made of silver, or other precious metal. The Vaquero Buckle is roughly rectangular, with rounded corners, a sculpted surface, and a rectangular cut-out at one end for the belt attachment. It has several surface levels, giving the appearance of two grooves cut across one corner and another at the diagonally opposite corner. The Winchester Buckle is somewhat more irregularly shaped, also with a rectangular cut-out for the belt attachment. There is a tapered, wavy groove cut where the tongue of the buckle would fit and a smaller (almost imperceptible) separate level at a corner near the belt. Defendant's buckles appear to be line-for-line copies, but are made of common metal rather than silver.

VAQUERO

WINCHESTER

1. The Court expresses no opinion as to the trademark infringement and unfair competition claims, since there has been no consideration of them thus far.

Plaintiff has registered a claim to copyright for each buckle: for the Winchester, Registration No. GP–119073, effective August 22, 1977; for the Vaquero, Registration No. VA–43–985, effective March 3, 1980 (after the commencement of this action). Defendant admits to copying and selling its copies of the Vaquero and to selling copies of the Winchester. Thus, on the questions of copyright infringement of the Vaquero Buckle and the Winchester Buckle, there remain only the legal issues of the validity of the copyrights and the adequacy of the notice under the copyright statutes.

During expedited discovery and the evidentiary hearings on the copyright claims, defendant has been restrained from continuing to sell or distribute the two buckles by a stipulation regarding the Winchester copies and a temporary restraining order regarding the Vaquero copies. The hearings on the copyright claims are complete, and, since there is "no genuine issue as to any material fact," Fed.R.Civ.P. 56(c), the Court is in a position to rule on the summary judgment motions. Hence, it is unnecessary to consider separately the motion for a preliminary injunction.

■ The threshold question in determining if plaintiff has valid copyright in the Winchester Buckle and the Vaquero Buckle is whether these belt buckles are copyrightable subject matter. We begin with a presumption that these belt buckles are copyrightable, since the Copyright Office registered plaintiff's claims to copyright. Under both the Copyright Act of 1909 ("1909 Act") and the Copyright Act of 1976 ("1976 Act"), registration by the Copyright Office is prima facie evidence of copyrightability, as well as of the information contained in the registration certificate. 1909 Act, 17 U.S.C. § 209 (1976) (repealed by 1976 Act); 1976 Act, 17 U.S.C. § 410(c) (Supp. I 1977). This presumption is not conclusive, however; it merely shifts the burden of proof. H.R.Rep. No. 1476, 94th Cong., 2d Sess. 157 (1976), *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 5659, 5773. Despite this initial judicial def-

erence to the expertise of the Copyright Office, its decisions are subject to review by the courts. *Bailie v. Fisher*, 258 F.2d 425 (D.C.Cir.1958).

■ Under the two statutes and the regulations promulgated thereunder, as well as under the relevant case law, the Winchester Buckle and the Vaquero Buckle are not copyrightable subject matter. Although plaintiff asserts that the buckles are jewelry or sculpture, they appear to be primarily belt buckles. Belt buckles are utilitarian objects designed to fasten belts and thus hold up or hold in a dress, skirt, or pants. Like most utilitarian objects, particularly those worn or carried on the person or used in the home, belt buckles may also be decorative.

A substantial body of law has developed on the subject of the copyrightability of utilitarian objects. Copyright protection was originally granted only to authors of maps, charts, and books and was not expanded to include three-dimensional works of art until 1870. *Mazer v. Stein*, 347 U.S. 201, 208–09, 74 S.Ct. 460, 465–466, 98 L.Ed. 630 (1954). Although the Copyright Office interpreted "works of art" broadly enough to include objects with utilitarian aspects, *id.*, at 211–13, 74 S.Ct. at 467–468, some courts did not. *Id.* at 203, 74 S.Ct. at 462. The Supreme Court, in *Mazer v. Stein, supra,* settled the issue, holding that the use or intended use of statuettes of dancing figures, which were otherwise eligible for copyright, as bases for table lamps did not bar or invalidate their registration. The Court's reasoning involved two steps: first, the holding that the statuettes were independently copyrightable as works of art, *id.* at 214, 74 S.Ct. at 468; and second, the holding that their use as lamp bases did not destroy their copyrightability.

The regulations adopted by the Copyright Office in the mid-1950's and modified in 1959 were an attempt to retain and refine the *Mazer* distinction between the work of art and its incorporation in a useful object such as a lamp. H.R.Rep. No. 1476, 94th Cong., 2d Sess. 54–55 (1976), *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp.

5659, 5668. The regulations on works of art [2] permitted the copyrighting of "works of artistic craftsmanship" regardless of the "intention of the author as to the use of the work." 37 C.F.R. § 202.10(a), (b). The regulations required, however, that the artistic features incorporated in the utilitarian object be separately identifiable and "capable of existing independently as a work of art." *Id.* § 202.10(c).

The requirement of separability and capability of independent existence for the artistic features to be copyrighted was emphasized in the principal case that treats extensively the question of copyrightability of utilitarian objects. The court in *Esquire, Inc. v. Ringer*, 591 F.2d 796 (D.C.Cir.1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1217, 59 L.Ed.2d 456 (1979), held that lighting fixtures designed with unusual elliptically shaped housings were not eligible for copyright protection as works of art because there were no separately identifiable artistic elements. The court noted that Congress, in its most recent pronouncement on the issue in considering the 1976 Act, unequivocally found ineligible for copyright "the overall design or configuration of a utilitarian object, even if it is determined by aesthetic as well as functional considerations." *Id.* at 804.

The 1976 Act further refined the test for copyrightability of useful articles. It defines the term as follows: "A 'useful article' is an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information. An article that is normally a part of a useful article is considered a 'useful article'." 17 U.S.C. § 101 (Supp. I 1977). In addition, the 1976 Act retains and enacts the separability and independent existence requirement of the 1959 regulations. See *id.*[3]

The Winchester Buckle, which was first issued on September 1, 1976, must be considered under the 1909 Act, the regulations promulgated thereunder, and the relevant case law. The Vaquero Buckle was first issued on June 1, 1978, and thus must be considered under the 1976 Act, which became effective on January 1, 1978. The tests of copyrightability under the two acts appear to be virtually the same, however, since the 1976 Act essentially incorporates the case law and regulations under the 1909 Act.

2. The regulations provided:

(a) General. This class includes published or unpublished works of artistic craftsmanship, insofar as their form but not their mechanical or utilitarian aspects are concerned, such as artistic jewelry, enamels, glassware, and tapestries, as well as works belonging to the fine arts, such as paintings, drawings and sculpture.

(b) In order to be acceptable as a work of art, the work must embody some creative authorship in its delineation or form. The registrability of a work of art is not affected by the intention of the author as to the use of the work, the number of copies reproduced, or the fact that it appears on a textile material or textile product. The potential availability of protection under the design patent law will not affect the registrability of a work of art, but a copyright claim in a patented design or in the drawings or photographs in a patent application will not be registered after the patent has been issued.

(c) If the sole intrinsic function of an article is its utility, the fact that the article is unique and attractively shaped will not qualify it as a work of art. However, if the shape of a utilitarian article incorporates features, such as artistic sculpture, carving, or pictorial representation, which can be identified separately and are capable of existing independently as a work of art, such features will be eligible for registration.

24 Fed.Reg. 4958 (1959) (codified at 37 C.F.R. § 202.10).

3. The definitional section of the 1976 Act provides:

"Pictorial, graphic, and sculptural works" include two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, technical drawings, diagrams, and models. Such works shall include works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned; the design of a useful article, as defined in this section, shall be considered a pictorial, graphic, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.

17 U.S.C. § 101 (Supp. I 1977).

Both buckles are uncopyrightable subject matter under either statute because they fail to satisfy the test of separability and independent existence of the artistic features, which is required under both statutes. The Court does not see in these buckles "pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of" the buckles. 17 U.S.C. § 101 (Supp. I 1977); *see* 37 C.F.R. § 202.10(c) (1977). Nor does plaintiff identify such features. Instead, the simple, sculptural form of the buckles seems to be very similar to the "overall design or configuration of a utilitarian object" that the *Esquire* court found uncopyrightable. 591 F.2d at 804. As the *Esquire* court pointed out, the Supreme Court in *Mazer* dealt with a different sort of issue. *Id.* at 804–05. In *Mazer*, the statuettes were clearly copyrightable subject matter capable of independent existence, and the only real question was whether their use as lamp bases *destroyed* their copyrightability. Here, each of the buckles is all one form, which, although pleasing, serves a utilitarian purpose. One cannot imagine the buckles or any part of them existing independently as sculpture in the way that the *Mazer* statuettes could exist.

■ The cases plaintiff cites in support of the copyrightability of his belt buckles are distinguishable. *Mazer*, as we have noted, is distinguishable because the statuettes are capable of existing as works of art independent of the utilitarian objects into which they are incorporated. As the legislative history of the 1976 Act makes clear, only the separable artistic features of utilitarian objects are copyrightable, such as the carving on the back of a chair (but not the chair, no matter how beautifully and originally designed). H.R.Rep. No. 1476, 94th Cong., 2d Sess. 55 (1976), *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 5659, 5668.

*Cynthia Designs, Inc. v. Robert Zentall, Inc.,* 416 F.Supp. 510 (S.D.N.Y.1976), and *Boucher v. DuBoyes, Inc.,* 253 F.2d 948 (2d Cir.), *cert. denied,* 357 U.S. 936, 78 S.Ct.

1384, 2 L.Ed.2d 1550 (1958), are distinguishable because they concern jewelry, which has been expressly recognized under the regulations as a special category within the general category of works of art. 37 C.F.R. § 202.10(a) (1977). *See* note 2 *supra.* Although it is possible to see belt buckles as jewelry under 37 C.F.R. § 202.10(a), they are more appropriately categorized as utilitarian articles under 37 C.F.R. § 202.10(c). *Boucher* is further distinguishable on the ground that it was decided before the refinement of the *Mazer* test in the 1959 regulations.

*Syracuse China Corp. v. Stanley Roberts, Inc.,* 180 F.Supp. 527 (S.D.N.Y.1960), and *William A. Meier Glass Co. v. Anchor Hocking Glass Corp.,* 95 F.Supp. 264 (W.D.Pa. 1951), which plaintiff also cites in support of copyrightability, do concern useful objects, as the jewelry cases do not. The copyrights in these cases, however, were for the designs *on* plates and glassware, not for the plates and glassware themselves. These designs, thus, satisfy the separability requirement, whereas the buckle designs do not.

*Dan Kasoff, Inc. v. Gresco Jewelry Co.,* 204 F.Supp. 694 (S.D.N.Y.), *aff'd,* 308 F.2d 806 (2d Cir. 1962), concerns a copyright on a small ornamental box. The court in *Dan Kasoff* discusses the issue of copyrightability very briefly, relying primarily on *Mazer* and making no mention of the test of separability. Since no description of the box is included, except that it was "ornamental" and had a "highly stylized cover," *id.* at 694, it is difficult to say whether satisfaction of the separability requirement was an issue there as it is here.

Plaintiff argues that his belt buckles are so unusual and ornamental that they constitute sculpture. There no longer is anything remotely resembling a standard belt buckle. There are many thousands of different designs for buckles which are, to varying degrees, ornamental. Even if we agree with plaintiff that his designs are particularly pleasing, that does not exalt their status as belt buckles. Under plaintiff's approach, virtually every new design for a belt buckle could properly be copyrighted.

■ The belt buckles in this case seem to belong more to the world of fashion design than to the world of literature and art, which is the traditional domain of copyright law. The status of designs for clothing is instructive. The design superimposed on a fabric is copyrightable, whereas the style of the dress (even an expensive Parisian couturier's design) in which the fabric is used is not—no matter how original, ornamental, or nonessential for function that design may be. 1 M. Nimmer, *Nimmer on Copyright* § 2.08[H] (1979). The fabric design can be seen as a separable artistic element, whereas the overall dress design—like the overall shape of the belt buckle—cannot.

■ Since copyright law is statutory, congressional intent should be accorded great weight. The wording of the 1976 Act demonstrates Congress's concern with distinguishing separable artistic features of useful articles, which are copyrightable, from useful articles themselves, which are not copyrightable. The House Report on the 1976 Act makes the distinction even more explicit:

> The test of separability and independence from "the utilitarian aspects of the article" does not depend upon the nature of the design—that is, even if the appearance of an article is determined by esthetic (as opposed to functional) considerations, only elements, if any, which can be identified separately from the useful article as such are copyrightable. And, even if the three-dimensional design contains some such element (for example, a carving on the back of a chair or a floral relief design on silver flatware), copyright protection would extend only to that element, and would not cover the over-all configuration of the utilitarian article as such.

H.R.Rep. No. 1476, 94th Cong., 2d Sess. 55 (1976), *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 5659, 5668. Finally, Congress has demonstrated its intention that useful articles not be copyrightable by its rejection—most recently in 1976—of copyright protection for original designs for consumer and industrial products. *See Esquire Inc. v. Ringer, supra,* 591 F.2d at 800. Proposed Title II of the 1976 Act would have given limited copyright protection to designs that are "part of a useful article, regardless of whether such designs could stand by themselves, separate from the article itself." H.R.Rep. No. 1476, 94th Cong., 2d Sess. 50 (1976), *reprinted in* [1976] U.S. Code Cong. & Admin.News, pp. 5659, 5663. The description in the House Report seems precisely applicable to plaintiff's belt buckles. Congress, however, did not enact that title. Perhaps Congress should have enacted Title II in order to protect such designs. But it is not the Court's role to fill in gaps in statutes that may exist, particularly when the omission is clearly deliberate, rather than inadvertent.[4]

Since the Court has found that these belt buckles are not properly copyrightable, a determination of whether plaintiff satisfied the statutory notice requirements is unnecessary, but brief discussion will suffice.

The Winchester Buckle probably satisfies the notice requirements under the 1909 Act. Although the notice is very small, it is legible to the naked eye—at least that of someone with excellent vision. The fact that defendant did not copy the Winchester Buckle but instead allegedly bought unauthorized copies from a manufacturer without notice to defendant of the copyright does not affect the validity of the copyright or defendant's liability for infringement. If defendant has sold the unauthorized copies, which he admits, defendant's liability—given a valid copyright—is established. The infringer's claimed lack of knowledge of the copyright[5] affects only damages, not basic liability and injunctive relief.

---

4. The limited copyright protection proposed in Title II, with a much shorter term than the copyright term of life of the author plus fifty years, seems more appropriate than traditional copyright for fashion design and other designs of useful articles.

5. Some evidence was presented, moreover, that defendant was not an innocent infringer, since its president knew in October 1979 that the buckles were copies and even saw the copyright application in the fall of 1979.

The Vaquero Buckle presents a different question under the notice requirements of the 1976 Act. The statute requires "reasonable notice," 17 U.S.C. § 401 (Supp. I 1977), which means legibility to the naked eye, as under the 1909 Act. 37 C.F.R. § 202.2(b)(8) (1979); 2 M. Nimmer, *Nimmer on Copyright* § 7.11[B] (1979). The copyright notice on the Vaquero Buckle, in the opinion of the Court, is not legible when viewed with the naked eye. The 1976 Act, however, includes a saving clause, which preserves the author's copyright despite publication without adequate notice,[6] provided that the claim of copyright is registered within five years of publication (which the plaintiff has done for the Vaquero Buckle) and provided that the copyright holder makes a reasonable effort to add adequate notice to all copies distributed to the public after notification of the omission.[7] 17 U.S.C. § 405 (Supp. I 1977). Once the notice requirement is satisfied—given a valid copyright—the copyright holder is entitled, at least, to injunctive relief against any infringer.

The Court finds that plaintiff's belt buckles do not fall in one of the specific categories of copyrightable subject matter already recognized in the statute, regulations, and case law and that they do not meet the test for copyrightability of useful objects. The Court declines to expand those categories and that test to allow the inclusion of plaintiff's buckles within their boundaries. Thus, defendant's motion for summary judgment on the copyright claims is granted, and plaintiff's motion for summary judgment or a preliminary injunction is denied.

There being no just reason for delay, the Clerk is directed to enter judgment in accordance herewith pursuant to Fed.R.Civ.P. 54(b).[8]

SO ORDERED.

6. An illegible notice is equivalent to an omitted notice for purposes of both section 401 and section 405. 2 M. Nimmer, *Nimmer on Copyright* § 7.14[A] (1979).

7. There is some doubt whether plaintiff has complied with the second requirement of the saving clause. Since this decision does not

turn on the notice issue, however, we need not make a final determination on it.

8. The parties have stipulated to a temporary stay, for a period of up to 20 days from the date of this opinion, pending application to the Court of Appeals for a stay pending appeal.