Barry **KIESELSTEIN–CORD,**
Plaintiff–Appellant,

v.

**ACCESSORIES BY PEARL, INC.,**
Defendant–Appellee.

No. 1351, Docket 80–7354.

United States Court of Appeals,
Second Circuit.

Argued June 19, 1980.
Decided Sept. 18, 1980.

Janet P. Kane, New York City (Ronald J. Levine, Phillips, Nizer, Benjamin, Krim & Ballon, New York City, on the brief), for plaintiff–appellant.

William F. Dudine, Jr. (David R. Francescani, Darby & Darby P.C., New York City, on the brief), for defendant–appellee.

Charles R. Reeves, John C. McNett, C. David Emhardt, Woodard, Weikart, Emhardt & Naughton, Indianapolis, Ind., for LaVenta Corporation d/b/a Indiana Metal Craft as amicus curiae.

Before OAKES and VAN GRAAFEILAND, Circuit Judges, and WEINSTEIN, District Judge.*

OAKES, Circuit Judge:

This case is on a razor's edge of copyright law. It involves belt buckles, utilitarian objects which as such are not copyrightable. But these are not ordinary buckles; they

* Of the Eastern District of New York, sitting by designation.

are sculptured designs cast in precious metals–decorative in nature and used as jewelry is, principally for ornamentation. We say "on a razor's edge" because the case requires us to draw a fine line under applicable copyright law and regulations. Drawing the line in favor of the appellant designer, we uphold the copyrights granted to him by the Copyright Office and reverse the district court's grant of summary judgment, 489 F.Supp. 732, in favor of the appellee, the copier of appellant's designs.

FACTS

Appellant Barry Kieselstein–Cord designs, manufactures exclusively by handcraftsmanship, and sells fashion accessories. To produce the two buckles in issue here, the "Winchester" and the "Vaquero," he worked from original renderings which he had conceived and sketched. He then carved by hand a waxen prototype of each of the works from which molds were made for casting the objects in gold and silver. Difficult to describe, the buckles are solid sculptured designs, in the words of district court Judge Goettel, "with rounded corners, a sculpted surface, . . . a rectangular cut–out at one end for the belt attachment," and "several surface levels." The Vaquero gives the appearance of two curved grooves running diagonally across one corner of a modified rectangle and a third groove running across the opposite corner. On the Winchester buckle two parallel grooves cut horizontally across the center of a more tapered form, making a curving ridge which is completed by the tongue of the buckle. A smaller single curved groove flows diagonally across the corner above the tongue.

The Vaquero buckle, created in 1978, was part of a series of works that the designer testified was inspired by a book on design of the art nouveau school and the subsequent viewing of related architecture on a trip to Spain. The buckle was registered with the Copyright Office by appellant's counsel on March 3, 1980, with a publication date of June 1, 1978, as "jewelry," although the appellant's contribution was listed on

the certificate as "original sculpture and design." Explaining why he named the earlier buckle design "Winchester," the designer said that he saw "in [his] mind's eye a correlation between the art nouveau period and the butt of an antique Winchester rifle" and then "pulled these elements together graphically." The registration, which is recorded on a form used for works of art, or models or designs for works of art, specifically describes the nature of the work as "sculpture."

The Winchester buckle in particular has had great success in the marketplace: more than 4,000 belts with Winchester buckles were sold from 1976 to early 1980, and in 1979 sales of the belts amounted to 95% of appellant's more than $300,000 in jewelry sales. A small women's size in silver with "double truncated triangle belt loops" sold, at the time this lawsuit commenced, at wholesale for $147.50 and a larger silver version for men sold at wholesale with loops for $662 and without loops for $465. Lighter—weight men's versions in silver wholesaled for $450 and $295, with and without loops respectively. The gold versions sold at wholesale from $1,200 to $6,000. A shortened version of the belt with the small Winchester buckle is sometimes worn around the neck or elsewhere on the body rather than around the waist. Sales of both buckles were made primarily in high fashion stores and jewelry stores, bringing recognition to appellant as a "designer." This recognition included a 1979 Coty American Fashion Critics' Award for his work in jewelry design as well as election in 1978 to the Council of Fashion Designers of America. Both the Winchester and the Vaquero buckles, donated by appellant after this lawsuit was commenced, have been accepted by the Metropolitan Museum of Art for its permanent collection.

As the court below found, appellee's buckles "appear to be line—for—line copies but are made of common metal rather than" precious metal. Appellee admitted to copying the Vaquero and selling its imitations, and to selling copies of the Winchester. Indeed some of the order blanks of appellee's customers specifically referred to "Barry K Copy," "BK copy," and even "Barry Kieselstein Knock—off." Thus the only legal questions for the court below were whether the articles may be protected under the copyright statutes and, if so, whether the copyrights were adequate under the laws. Having found that the copyrights were invalid—the Winchester under the Copyright Act of 1909, and the Vaquero under the 1976 Act [1]—because they "fail[ed] to satisfy the test of separability and independent existence of the artistic features, which is required under both statutes," Judge Goettel did not go on to make a conclusive determination on the further question whether the notice requirements of the acts had been met by appellant. Instead, he found that the Winchester buckle "probably" satisfies the 1909 Act notice requirements, and he reserved the question whether, with respect to the Vaquero buckle, appellant met the notice requirements of the 1976 Act by way of a saving clause that preserves a copyright despite publication without adequate notice, 17 U.S.C. § 405. We therefore only reach the question whether the buckles may be copyrighted.

DISCUSSION

We commence our discussion by noting that no claim has been made that the appellant's work here in question lacks originality or creativity, elements necessary for copyrighting works of art. *See L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486 (2d Cir.), *cert. denied*, 429 U.S. 857, 97 S.Ct. 156, 50 L.Ed.2d 135 (1976); *Alfred Bell & Co. v. Catalda Fine Arts, Inc.*, 191 F.2d 99 (2d Cir. 1951); 1 *Nimmer on Copyright* §§ 2.01, 2.08[B] (1980). The thrust of appellee's argument, as well as of the court's decision below, is that appellant's buckles are not copyrightable because they are "useful articles" with no "pictorial, graphic, or sculptural features that can be identified sepa-

1. The Winchester buckle was registered before the January 1, 1978, effective date of the Copyright Act of 1976.

rately from, and are capable of existing independently of, the utilitarian aspects" of the buckles. The 1976 copyright statute does not provide for the copyrighting of useful articles except to the extent that their designs incorporate artistic features that can be identified separately from the functional elements of the articles. *See* 17 U.S.C. §§ 101, 102.[2] With respect to this question, the law adopts the language of the longstanding Copyright Office regulations, 37 C.F.R. § 202.10(c) (1977)[3] (revoked Jan. 5, 1978, 43 Fed.Reg. 965, 966 (1978)). The regulations in turn were adopted in the mid-1950's, under the 1909 Act, in an effort to implement the Supreme Court's decision in *Mazer v. Stein*, 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630 (1954). *See* H.R.Rep.No. 1476, 94th Cong., 2d Sess. 54–55 (1976), *reprinted in* [1976] U.S. Code Cong. & Admin.News, pp. 5659, 5668 [hereinafter cited as *House Report*]. The Court in *Mazer*, it will be recalled, upheld the validity of copyrights obtained for statuettes of male and female dancing figures despite the fact that they were intended for use and used as bases for table lamps, with electric wiring, sockets, and lampshades attached. *Mazer* itself followed a "contemporaneous and long–continued construction" by the Copyright Office of the 1870 and 1874 Acts as well as of the 1909 Act, under which the case was decided. 347 U.S. at 211–13, 74 S.Ct. at 467. As Professor Nimmer points out, however, the Copyright Office's regulations in the mid–1950's that purported to "implement" this decision actually limited the Court's apparent open–ended extension of copyright protection to all aesthetically pleasing useful articles. *See* 1 Nimmer, *supra*, § 2.08[B], at 2–88 to 2–89.

Ultimately, as Professor Nimmer concludes, none of the authorities–the *Mazer* opinion, the old regulations, or the statute–offer any "ready answer to the line–draw-

2. 17 U.S.C. § 101 provides in relevant part:
   As used in this title, the following terms and their variant forms mean the following:

   \* \* \* \* \* \*

   "Pictorial, graphic, and sculptural works" include two–dimensional and three–dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, technical drawings, diagrams, and models. Such works shall include works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned; the design of a useful article, as defined in this section, shall be considered a pictorial, graphic, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.

   \* \* \* \* \* \*

   A "useful article" is an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information. An article that is normally a part of a useful article is considered a "useful article".
   17 U.S.C. § 102 provides generally for copyright protection of "pictorial, graphic, and sculptural works."

3. 37 C.F.R. § 202.10, *reprinted in 4 Nimmer on Copyright*, App. 11, at 11–13 to 11–14 (1980), provided as follows:
   Works of Art (Class G)

   (a) General[.] This class includes published or unpublished works of artistic craftsmanship, insofar as their form but not their mechanical or utilitarian aspects are concerned, such as artistic jewelry, enamels, glassware, and tapestries, as well as works belonging to the fine arts, such as paintings, drawings and sculpture. [Revoked Jan. 1, 1978, 43 Fed.Reg. 965, 966 (1978).]

   (b) In order to be acceptable as a work of art, the work must embody some creative authorship in its delineation or form. The registrability of a work of art is not affected by the intention of the author as to the use of the work, the number of copies reproduced, or the fact that it appears on a textile material or textile product. The potential availability of protection under the design patent law will not affect the registrability of a work of art, but a copyright claim in a patented design or in the drawings or photographs in a patent application will not be registered after the patent has been issued. [Current version at 37 C.F.R. § 202.10(b) (1979).]

   (c) If the sole intrinsic function of an article is its utility, the fact that the article is unique and attractively shaped will not qualify it as a work of art. However, if the shape of a utilitarian article incorporates features, such as artistic sculpture, carving, or pictorial representation, which can be identified separately and are capable of existing independently as a work of art, such features will be eligible for registration. [Revoked Jan. 1, 1978, 43 Fed.Reg. 965, 966 (1978).]

ing problem inherent in delineating the extent of copyright protection available for works of applied art." *Id.* at 2–89. Congress in the 1976 Act may have somewhat narrowed the sweep of the former regulations by defining a "useful article" as one with "*an* intrinsic utilitarian function," 17 U.S.C. § 101 (emphasis added), instead of one, in the words of the old regulations, with utility as its "*sole* intrinsic function," 37 C.F.R. § 202.10(c) (1977) (revoked Jan. 5, 1978, 43 Fed.Reg. 965, 966 (1978)) (emphasis added).

We are left nevertheless with the problem of determining when a pictorial, graphic, or sculptural feature "can be identified separately from, and [is] capable of existing independently of, the utilitarian aspects of the article," 17 U.S.C. § 101. This problem is particularly difficult because, according to the legislative history explored by the court below, such separability may occur either "physically or conceptually," *House Report* at 55, [1976] U.S.Code Cong. & Admin.News at 5668. As the late Judge Harold Leventhal observed in his concurrence in *Esquire, Inc. v. Ringer*, 591 F.2d 796, 807 (D.C. Cir. 1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1217, 59 L.Ed.2d 456 (1979), legislative policy supports the Copyright Office's "effort to distinguish between the instances where the aesthetic element is conceptually severable and the instances where the aesthetic element is inextricably interwoven with the utilitarian aspect of the article."[4] Examples of conceptual separateness as an artistic notion may be found in many museums today and even in the great outdoors. Professor Nimmer cites Christo's "Running Fence" as an example of today's "conceptual art": it "did not contain sculptural features that were physically separable from the utilitarian aspects of the fence, but the whole point of the work was that the artistic aspects of the work were conceptually separable." 1 Nimmer, *supra*, § 2.08[B] at 2–94.

Appellee argues that the belt buckles are merely useful objects, which include decorative features that serve an aesthetic as well as a utilitarian purpose. And the copyright laws, appellee points out, were never intended to nor would the Constitution permit them to protect monopolies on useful articles. But appellee goes too far by further arguing that "copyrightability cannot adhere in the 'conceptual' separation of an artistic element." Brief for Defendant–Appellee at 17. This assertion flies in the face of the legislative intent as expressed in the House Report, which specifically refers to elements that "physically or conceptually, can be identified as separable from the utilitarian aspects of" a useful article. *House Report* at 55, [1976] U.S. Code Cong. & Admin.News at 5668.

We see in appellant's belt buckles conceptually separable sculptural elements, as apparently have the buckles' wearers who have used them as ornamentation for parts of the body other than the waist. The primary ornamental aspect of the Vaquero and Winchester buckles is conceptually separable from their subsidiary utilitarian function. This conclusion is not at variance with the expressed congressional intent to distinguish copyrightable applied art and uncopyrightable industrial design, *House Report* at 55, [1976] U.S. Code Cong. & Admin.News at 5668. Pieces of applied art, these buckles may be considered jewelry, the form of which is subject to copyright protection, *Boucher v. Du Boyes, Inc.*, 253 F.2d 948, 949 (2d Cir.), *cert. denied*, 357 U.S. 936, 78 S.Ct. 1384, 2 L.Ed.2d 1550 (1958); *Cynthia Designs, Inc. v. Robert Zentall, Inc.*, 416 F.Supp. 510, 511–12 (S.D.N.Y. 1976); *Trifari, Krussman & Fishel, Inc. v. Charel Co.*, 134 F.Supp. 551, 552–53 (S.D.N.Y.1955).[5]

Appellant's designs are not, as the appellee suggests in an affidavit, mere variations

---

4. The court of appeals in the *Esquire* case reversed Judge Gesell's finding of conceptual separateness in the overall artistic design of an outdoor lighting fixture, 414 F.Supp. 939 (D.D.C.1976). *See* 591 F.2d 796, 800 (D.C. Cir. 1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1217, 59 L.Ed.2d 456 (1979).

5. These cases were decided under the old Copyright Act of 1909, which protected "all the writings of an author," 17 U.S.C. § 4 (1976), and which included as one of the classes to which copyrighted work might belong "works of art; models or designs for works of art," *id.* § 5. Regulations promulgated under the 1909

of "the well–known western buckle." As both the expert witnesses for appellant testified and the Copyright Office's action implied, the buckles rise to the level of creative art. Indeed, body ornamentation has been an art form since the earliest days, as anyone who has seen the Tutankhamen or Scythian gold exhibits at the Metropolitan Museum will readily attest. The basic requirements of originality and creativity, which the two buckles satisfy and which all works of art must meet to be copyrighted, would take the vast majority of belt buckles wholly out of copyrightability. The Copyright Office continually engages in the drawing of lines between that which may be and that which may not be copyrighted. It will, so long as the statute remains in its present form, always be necessary to determine whether in a given case there is a physically or conceptually separable artistic sculpture or carving capable of existing independently as a work of art.

We reverse the grant of summary judgment to the appellee and remand the case for consideration of whether appellant has satisfied the copyright notice requirements.

WEINSTEIN, District Judge (dissenting):

The trial judge was correct on both the law and the facts for the reasons given in his excellent opinion holding that plaintiff was not entitled to copyright protection. *Kieselstein–Cord v. Accessories By Pearl, Inc.*, 489 F.Supp. 732 (S.D.N.Y.1980). The works sued on are, while admirable aesthetically pleasing examples of modern design, indubitably belt buckles and nothing else; their innovations of form are inseparable from the important function they serve—

helping to keep the tops of trousers at waist level.

The conclusion that affirmance is required is reached reluctantly. The result does deny protection to designers who use modern three–dimensional abstract works artfully incorporated into a functional object as an inseparable aspect of the article while granting it to those who attach their independent representational art, or even their trite gimmickry, to a useful object for purposes of enhancement. Moreover, this result enables the commercial pirates of the marketplace to appropriate for their own profit, without any cost to themselves, the works of talented designers who enrich our lives with their intuition and skill. The crass are rewarded, the artist who creates beauty is not. All of us are offended by the flagrant copying of another's work. This is regrettable, but it is not for this court to twist the law in order to achieve a result Congress has denied.

Both of appellant's designs may be described as rough geometric shapes with uneven surfaces, one of them having two wavy lines in the corner. These arrangements are embodied within a useful article—a belt buckle. They transform the ordinary square buckle—with each of its sides of equal width, and a narrow tongue attached to one side—into a four sided structure with sides of unequal thickness and the usual narrow tongue. The artist has enhanced the appearance of the buckles by rendering their shape aesthetically pleasing without interfering with function. It is the originator's success in completely integrating the artistic designs and the functional aspects of the buckles that preclude copyright.

Act listed "artistic jewelry" as an example of "works of art." 37 C.F.R. § 202.10(a) (1977), see note 3 *supra*.

The current statute extends copyright protection to "pictorial, graphic, and sculptural works," 17 U.S.C. § 102(a)(5), and notes that, in the words of the old regulation, 37 C.F.R. § 202.10(a) (1977), see note 3 *supra*, "[s]uch works shall include works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are con-

cerned." 17 U.S.C. § 101, see note 2 *supra*. The new statute, while incorporating this regulatory definition, omits the specific examples, such as "artistic jewelry," listed in the old regulations. This omission does not suggest that jewelry may not be copyrighted. In fact, the explicit congressional adoption of the Copyright Office's definition indicates that jewelry remains within the scope of copyright protection.

 

Winchester    Vaquero

The 1976 Copyright Act protects only those portions of useful articles, such as belt buckles, consisting of "sculptural features that can be identified separately from, and are capable of existing independently of the utilitarian aspects of the article." In relevant portions, the copyright law, title 17 of the United States Code, reads:

§ 101. Definitions

 *  *  *  *  * .  *

"Pictorial, graphic, and sculptural works" include two–dimensional and three–dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, technical drawings, diagrams, and models. Such works shall include works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned; *the design of a useful*

*article*, as defined in this section, shall be considered a pictorial, graphic, or sculptural work only if, *and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.*

 *  *  *  *  *  *

A "useful article" is an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information. *An article that is normally a part of a useful article is considered a "useful article".* § 102. Subject matter of copyright: In general.

(a) Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medi-

um of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. *Works of authorship* include the following categories:

\* \* \* \* \* \*

(5) *pictorial, graphic, and sculptural works;*

(b) In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.

(Emphasis supplied.)

The statute follows the decision of the Supreme Court in *Mazer v. Stein,* 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630, *rehearing denied,* 347 U.S. 949, 74 S.Ct. 637, 98 L.Ed. 1096 (1954). In *Mazer,* the Court held that independent works of art may be copyrighted even if they are incorporated into useful articles—"nothing in the copyright statute ... support[s] the argument that the intended use or use in industry of an article eligible for copyright bars or invalidates its registration." *Id.* at 218, 74 S.Ct. at 471. But the copyright protection covered only that aspect of the article that was a separately identifiable work of art independent of the useful article, in that instance a statuette used as part of a lamp.

Among recent decisions making this same distinction is *Esquire v. Ringer,* 591 F.2d 796 (D.C.Cir.), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1217, 59 L.Ed.2d 456, *rehearing denied,* 441 U.S. 917, 99 S.Ct. 2019, 60 L.Ed.2d 389 (1979). *Esquire* denied copyright protection to the overall shape of a lighting fixture because of its integration of the functional aspects of the entire lighting assembly. The "overall design or configuration of a utilitarian object, even if it is determined by aesthetic as well as functional considerations, is not eligible for copyright." *Id.* at 804.

While the distinction is not precise, the courts, both before and after *Mazer,* have tried to follow the principle of the copyright act permitting copyright to extend only to ornamental or superfluous designs contained within useful objects while denying it to artistically designed functional components of useful objects. Generally they have favored representational art as opposed to non–representation artistic forms which are embodied in, and part of the structure of, a useful article. *Compare, e.g., Ted Arnold Ltd. v. Silvercraft Co.,* 259 F.Supp. 733 (S.D.N.Y.1966) (antique telephone used to encase a pencil sharpener copyrightable); *Royalty Designs Inc. v. Thrifticheck Service Corp.,* 204 F.Supp. 702 (S.D.N.Y.1962) (toy banks in shape of dogs copyrightable); *Scarves by Vera, Inc. v. United Merchants and Mfrs., Inc.,* 173 F.Supp. 625 (S.D.N.Y.1959) (designs printed upon scarves copyrightable); *Syracuse China Corp. v. Stanley Roberts, Inc.,* 180 F.Supp. 527 (S.D.N.Y.1960) (designs on dinnerware copyrightable) *with Esquire v. Ringer,* 591 F.2d 796 (D.C.Cir.), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1217, 59 L.Ed.2d 456, *rehearing denied,* 441 U.S. 917, 99 S.Ct. 2019, 60 L.Ed.2d 389 (1979) (copyright denied to overall design of lighting fixture); *SCOA Industries, Inc. v. Famolare, Inc.,* 192 U.S.P.Q. 216 (S.D.N.Y.1976) (wavy lines on soles of shoes not copyrightable); *Vacheron & Constantin–Le Coultre Watches, Inc. v. Benrus Watch Co.,* 155 F.Supp. 932 (S.D.N.Y.1957), *affirmed in part, reversed on other grounds,* 260 F.2d 637 (2d Cir. 1958) (artistically designed non–representational watchface not copyrightable); *Russell v. Trimfit, Inc.,* 428 F.Supp. 91 (E.D.Pa.1977), *affirmed,* 568 F.2d 770 (3d Cir. 1978) (designs of "toe socks" not copyrightable); *Jack Adelman, Inc. v. Sonners & Gordon, Inc.,* 112 F.Supp. 187 (S.D.N.Y.1934) (picture of a dress may be copyrighted but the dress itself may not be). The relative certainty that has developed in this area of the law should not be disturbed absent some compelling development—and none has thus far been presented.

Interpretation and application of the copyright statute is facilitated by House Report No. 94–1476, U.S.Code Cong. & Admin.News 1976, p. 5658, by the Committee

on the Judiciary. It explicitly indicated that the rule of *Mazer* was incorporated.

In accordance with the Supreme Court's decision in *Mazer v. Stein*, 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630 (1954), works of "applied art" encompass all original pictorial, graphic, and sculptural works that are intended to be or have been embodied in useful articles, regardless of factors such as mass production, commercial exploitation, and the potential availability of design patent protection ...

The Committee has added language to the definition of "pictorial, graphic, and sculptural works" in an effort to make clearer the distinction between works of applied art protectable under the bill and industrial designs not subject to copyright protection. The declaration that "pictorial, graphic, and sculptural works" include "works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned" is classic language: it is drawn from Copyright Office regulations promulgated in the 1940's and expressly endorsed by the Supreme Court in the *Mazer* case.

\*    \*    \*    \*    \*    \*

In adopting this amendatory language, the Committee is seeking to draw as clear a line as possible between copyrightable works of applied art and uncopyrighted works of industrial design. A two–dimensional painting, drawing, or graphic work is still capable of being identified as such when it is printed on or applied to utilitarian articles such as textile fabrics, wallpaper, containers, and the like. The same is true when a statue or carving is used to embellish an industrial product or, as in the *Mazer* case, is incorporated into a product without losing its ability to exist independently as a work of art. On the other hand, *although the shape of an industrial product may be aesthetically satisfying and valuable, the Committee's intention is not to offer it copyright protection under the bill.* Unless the shape of an automobile, airplane, ladies' dress, food processor, television set, or any other industrial product contains some element that, physically or conceptually, can be identified as separable from the utilitarian aspects of that article, the design would not be copyrighted under the bill. The test of separability and independence from "the utilitarian aspects of the article" does not depend upon the nature of the design—that is, even if the appearance of an article is determined by aesthetic (as opposed to functional) considerations, only elements, if any, which can be identified separately from the useful article as such are copyrightable. *And, even if the three–dimensional design contains some such element (for example, a carving on the back of a chair or a floral relief design on silver flatware), copyright protection would extend only to that element, and would not cover the overall configuration of the utilitarian article as such.*

1976 U.S.Code Cong. & Admin.News, pp. 5667–5668. (Emphasis supplied.)

Congress considered and declined to enact legislation that would have extended copyright protection to "[t]he 'design of a useful article' ... including its two–dimensional or three–dimensional features of shape and surface, which make up the appearance of the article." H.R. 2223, Title II, § 201(b)(2), 94th Cong., 1st Sess. (January 28, 1975). Passage of this provision was recommended by the Register of Copyrights, Hearings on H.R. 2223 Before the Subcomm. on Courts, Civil Liberties, and the Administration of Justice of the House Comm. on the Judiciary (Oct. 30, 1975) (testimony of Barbara Ringer), Reprinted in 16 Omnibus Copyright Revision Legislative History, 1855–59 (1975), and the United States Department of Commerce, Hearings on H.R. 2223 Before the Subcomm. on Courts, Civil Liberties and the Administration of Justice of the House Comm. on the Judiciary (May 8, 1975) (testimony and statement of Rene Tegtmeyer), Reprinted in 14 Omnibus Copyright Revision Legislative History, 161–162, 166–169. It was opposed by the Department of Justice on policy grounds. Hearings on H.R. 2223 Before the Subcomm. on Courts, Civil Liberties and the Administration of Justice

of the House Comm. on the Judiciary (May 8, 1975) (testimony of Irwin Goldbloom), Reprinted in 14 Omnibus Copyright Revision Legislative History, 127–130, 139–141. The Justice Department noted the important substantive objections to the proposal—primarily it would charge the public a fee for the use of improved and pleasing new designs and styles in useful articles.

Of particular concern to this Department is the new form of copyright protection provided by title II of the bill.

This new form of protection is a hybrid between design patents, 35 U.S.C. 171–173, issued for a period of up to 14 years by the Patent Office for new, original and ornamental designs of articles of manufacture and the copyright laws which provide for registration and issuance of certificates of copyrights for the writings of authors. The new protection that is provided under the bill is not presently available. under the copyright laws and can only be obtained through a design patent after an examination procedure which determines whether the ornamental design meets the criteria of patentability, including unobviousness in view of the prior art, as provided by 35 U.S.C. 102, 103.

While the protection period as proposed for the new type of ornamental design protection is only a maximum of 10 years as compared with the maximum of 14 years available for a design patent, it is granted without the need of meeting the novelty and unobviousness requirements of the patent statute.

A *threshold consideration* before finding that the needs are such that this new type of protection should be available *is whether the benefits to the public of such protection outweigh the burdens. We believe that insufficient need has been shown to date to justify removing from the public domain and possible use by others of the rights and benefits proposed under the present bill for such ornamental designs.* We believe that design patents, as are granted today, are as far as the public should go to grant exclusive rights for ornamental designs of useful articles in the absence of an adequate showing that the new protection will provide substantial benefits to the general public which outweigh removing such designs from free public use.

While it has been said that the examination procedure in the Patent Office results in serious delays in the issuance of a design patent so as to be a significant problem and damaging to "inventors" of ornamental designs of useful articles, *the desirable free use of designs which do not rise to patentable invention of ornamental designs of useful articles are believed* to be paramount.

*If the contribution made to the public by the creation of an ornamental design of a useful article is insufficient to rise to patentable novelty, the design should not be protected by the law.* The Department of Justice has consistently opposed legislation of this character.

To omit Federal statutory protection for the form of a useful object is not to deny the originator of that form any remedy whatsoever. If he can prove that competitors are passing their goods as the originator's by copying the product's design, he may bring an unfair competition action against such copyists.

*Id.* at 139–140. (Emphasis supplied.)

No additional testimony was received with respect to this aspect of the House bill. The Joint Senate–House Conference Committee deleted the design protection section to give further consideration to its administrative difficulties and to the benefits and burdens created by limiting the free public domain. 1976 U.S.Code Cong. & Admin. News, pp. 5663, 5832. The attempt to gain protection was again mounted when Representative Thomas F. Railsback introduced H.R. 4530 on June 19, 1979 to amend the Copyright Act of 1976. H.R. 4530's section 902 contains protections for the design of useful objects identical to those omitted from the 1976 Copyright Act. It was not adopted by Congress.

Interestingly, even if the design protection section proposed by the Department of Commerce and Representative Railsback had been passed, appellant's buckles might still have been excluded under the following

subsection excluding three–dimensional features of apparel:

## DESIGNS NOT SUBJECT TO PROTECTION

§ 202. *Protection under this title shall not be available for a design that is—*

\* \* \* \* \* \*

(e) *composed of three–dimensional features of shape and surface with respect to men's, women's and children's apparel,* including undergarments and outerwear.

(Emphasis supplied.) *See also* proposed § 202(b) (shape which has become common); § 202(c) (variants).

The distinctions between copyrightable "pictorial, graphic and sculptural works" and noncopyrightable industrial "designs" reflect serious concerns about the promotion of competition, the widespread availability of quality products and the advancement of technology through copying and modification. *See, e. g.,* G. Nelson, Design, 170 (1979) (experience suggests that free copying results in more rapid development); Comment, Copyright Protection for Mass Produced, Commercial Products: A Review of the Developments Following *Mazer v. Stein,* 38 U.Chi.L.Rev. 807, 819–22 (1971); Note, Protection for the Artistic Aspects of Articles of Utility, 72 Harv.L.Rev. 1520, 1532–4 (1959). A similar need to balance societal interest in the availability of literary and dramatic works against the copyright holders' interest in their exclusive enjoyment is reflected in the fair use provisions of the Copyright Act of 1976. 17 U.S.C. §§ 107–112. *See also, e. g.,* Note, Copyright Infringement and the First Amendment, 79 Col.L.Rev. 320 (1979); Ramos, The Betamax Case: Accommodating Public Access and Economic Incentive in Copyright Law, 11 Intellectual Property L.Rev. 221, 230–1 (1979).

Important policies are obviously at stake. Should we encourage the artist and increase the compensation to the creative? Or should we allow cheap reproductions which will permit our less affluent to afford beautiful artifacts? Appellant sold the original for $600.00 and up. Defendant's version went for one–fiftieth of that sum.

Thus far Congress and the Supreme Court have answered in favor of commerce and the masses rather than the artists, designers and the well–to–do. Any change must be left to those higher authorities. The choices are legislative not judicial.