McKEAGUE, Circuit Judge,
dissenting.
The majority presents a thoughtful approach to this difficult “metaphysical quandary” that courts have wrestled with for years. See Universal Furniture Int’l, Inc. v. Collezione Europa USA, Inc., 618 F.3d 417, 434 (4th Cir.2010). I agree with the majority’s general approach. We first define the work’s function and then ask whether the claimed elements can be identified separately from, or exist indepen *495 dently of, that function. I depart with the majority’s analysis, however, in how the function of these designs is defined. I would hold that there is no conceptual separability and that Varsity’s designs are not copyrightable. I therefore dissent.
Function. The majority explains that the function of a cheerleading uniform is to wick away moisture and “permit the wearer to cheer, jump, kick, and flip.” That broad definition could be used to describe all athletic gear. But the particular athletic uniforms before us serve to identify the wearer as a cheerleader. Without stripes, braids, and chevrons, we are left with a blank white pleated skirt and crop top. As the district court recognized, the reasonable observer would not associate this blank outfit with cheerleading. This may be appropriate attire for a match at the All England Lawn Tennis Club, but not for a member of a cheerleading squad.
A narrower approach to “function” finds support in other circuits’ caselaw. In Jovani Fashion, Ltd. v. Fiesta Fashions, 500 Fed.Appx. 42, 44 (2d Cir.2012), the Second Circuit concluded that the function of a prom dress was to clothe the body “in an attractive way for a special occasion” because this “clothing, in addition to covering the body, serves a ‘decorative function.’ ” Id. at 45 (citing Whimsicality, Inc. v. Rubie’s Costume Co., 891 F.2d 452, 455 (2d Cir.1989)). Why? Because “the decorative elements of clothing are generally ‘intrinsic’ to the overall function, rather than separable from it.” Id. Similarly, the Fifth Circuit in Galiano v. Harrah’s Operating Co., 416 F.3d 411 (5th Cir.2005), explained that a casino uniform’s function is just ■ that: to serve as a “casino uniform[ ].” Id. Clothing provides many functions, but a uniform at its core identifies its wearer as a member of a group. It follows that the stripes, braids, and chevrons on a cheer-leading uniform are integral to its identifying function.
The majority rejects this categorization because this holding would purportedly “render nearly all artwork unprotectable.” That’s not true. It renders unprotectable only artwork that is integral to an item’s utilitarian function. In defining that function, we are confined by caselaw and by common sense. Take a dresser, for example. The function of a dresser is to store clothes and other articles. Any ornamental designs displayed on the surface of a dresser are not integral to that function. Cf. Universal Furniture, 618 F.3d at 434. Those ornamental designs would therefore be copyrightable. Id. In contrast, a painting is not subject to the separability analysis because it does not qualify as a “useful article” under 17 U.S.C. § 101.
Separability. Once function is properly defined, it logically follows: the placement of the stripes, braids, and chevrons is not separable from that function. In Jovani Fashion, in relation to a prom dress, the court excluded from copyright “the arrangement of decorative sequins and crystals on the dress bodice; horizontal satin ruching on the dress waist; and layers of tulle on the skirt.” 500 Fed.Appx. at 44. Here, as in that case, there is no evidence that Varsity’s designers “exereise[d] artistic judgment ‘independently of functional influences,’ rather than as a ‘merger of aesthetic and functional considerations.’” Id. (quoting Brandir Int’l, Inc. v. Cascade Pac. Lumber Co., 834 F.2d 1142, 1145 (2d Cir.1987)). In both cases, the designers’ aesthetic considerations merged with functional concerns: “to cover the body in an attractive way for a special occasion,” id, and to identify the wearer as a member of a particular cheerleading squad. Without the stripes, braids, and chevrons, a blank shell of a cheerleading uniform would lose
*496 an important dimension of its functional utility.
These designs are unlike other items that are copyrightable. Take the belt buckles in Kieselsteinr-Cord v. Accessories by Pearl, Inc., 632 F.2d 989, 993 (2d Cir.1980). The court in that case concluded that while belt buckles are utilitarian objects designed to hold pants in place, the claimed designs were “conceptually separable sculptural elements.” Id. Here, unlike Kieselsteinr-Cord, Varsity’s designs would lose their ability to identify the wearer as a cheerleader without these aesthetic elements. Rather than simply “giv[ing the pieces] a pretty face,” Universal Furniture, 618 F.3d at 434 (discussing Pivot Point Int’l, Inc. v. Charlene Products, Inc., 372 F.3d 913, 916 (7th Cir.2004)), Varsity’s designs enhance the garment’s utility. The claimed artistic choices thus cannot be separated from that function.
The majority notes that the Copyright Office’s registration for Varsity’s two-dimensional sketches is entitled to Skidmore deference. See Hi-Tech Video Prods., Inc. v. Capital Cities/ABC, Inc., 58 F.3d 1093, 1095 (6th Cir.1995). Fair enough, but “under Skidmore, we follow an agency’s rule only to the extent it is persuasive.” Gonzales v. Oregon, 546 U.S. 243, 269, 126 S.Ct. 904, 163 L.Ed.2d 748 (2006) (emphasis added). And this determination is not at all persuasive. It is not supported by the Copyright Act’s “text and design.” Id. Nor is it “consistent with the congressional purpose.” Morton v. Ruiz, 415 U.S. 199, 237, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974); see also S. Rehab. Grp., P.L.L.C. v. Sec’y of Health & Human Servs., 732 F.3d 670, 685 (6th Cir. 2013). The Copyright Office’s determination, therefore, does not change my conclusion.
The fact that Varsity’s artistic choices may have been “ ‘aesthetically satisfying and valuable’” likewise does not change this conclusion. See Carol Barnhart Inc. v. Economy Cover Corp., 773 F.2d 411, 418 (2d Cir.1985) (quoting H.R. Rep. No. 94r-1476 at 55 (1976)). Rather, a more particularized assessment of function accounts for the inherent tension created by protection of clothing design in the Intellectual Property arena. In dicta, this Court has discussed questions implicated by extending copyright protection to articles with utilitarian value, like clothing. Recognizing copyright protection for items with utilitarian function “would allow for the protection of patent-like features without having to fulfill the rigorous standards for obtaining a design patent.” See Winfield Collection, Ltd. v. Gemmy Indus., Corp., 147 Fed.Appx. 547, 550-52 (6th Cir.2005) (citations omitted).
Ultimately, this case turns on how function is defined. How broadly should courts define the function of an article of clothing? Should they define it at its most basic function, to cover the body? Should they define it broadly, as the majority does in this case, as wicking away moisture and “permitting] the wearer to cheer, jump, kick, and flip”? Or should they define it more particularly, in relation to its specific purpose — as identifying the wearer as a cheerleader? See Jovani Fashion, 500 Fed.Appx. at 44 (concluding that the function of a prom dress is “to cover the body in an attractive way for a special occasion”). For the above reasons I submit the more particularized assessment is more sensible and consonant with the purposes of the law.
It is apparent that either Congress or the Supreme Court (or both) must clarify copyright law with respect to garment design. The law in this area is a mess — and *497 it has been for a long time. See Fashion Originators Guild of Am. v. Fed. Trade Comm’n, 114 F.2d 80, 81 (2d Cir.1940) (Hand, J.). The majority takes a stab at sorting it out, and so do I. But until we get much-needed clarification, courts will continue to struggle and the business world will continue to be handicapped by the uncertainty of the law.
I respectfully dissent.